OPINION
{¶ 1} Plaintiff-appellant, Frances Foor Martin, appeals from a grant of summary judgment rendered by the Franklin County Court of Common Pleas, Probate Division, in favor of defendants-appellees, William C. Dew, Emma C. Dew, Frank Hussey, Kathleen McLaughlin, Michael McLaughlin, David McLaughlin, Bonnie McLaughlin, Melinda McCall, Elaine Barnum, the Cat Welfare Association, and the Ohio Attorney General, in a will contest action.
 {¶ 2} Eleanora Baker Stormont ("decedent") was born on April 26, 1905, in Fairfield County. On June 19, 2001, decedent executed a will in the presence of attorney Charles Gayton and his wife, Janice Gayton. In her will, decedent made bequests to various individuals, including specific monetary bequests to Dr. William C. Dew and his wife, Emma C. Dew ($200,000), Melinda McCall ($15,000), Kathleen McLaughlin ($20,000), Michael McLaughlin ($20,000), Patrick Belcher ($20,000), The Cat Welfare Association ($1,000) and Frank Hussey ($30,000). Prior to executing the 2001 will, decedent had executed at least three other testamentary documents, including two wills drafted by Gayton in 1993 and 2000, respectively. Decedent's 2001 will expressly revoked all prior wills.
 {¶ 3} Decedent died on March 13, 2002, and the will executed in her name on June 19, 2001, was admitted into probate on March 15, 2002. On August 23, 2002, appellant filed a complaint to contest the will. Appellant claimed an interest in the will as a cousin of decedent (i.e., a lineal descendent of decedent's paternal grandparents). In the complaint, appellant contested the will based upon the allegation that decedent had not executed the will admitted into probate. Alternatively, appellant argued that decedent lacked testamentary capacity and was unduly influenced by William Dew.
 {¶ 4} By entry filed April 30, 2003, the probate court made a determination that appellant "is the first cousin once removed of decedent," and, thus, as a lineal descendent of decedent, had the requisite standing to pursue a will contest action in this matter. On May 15, 2003, appellees, William C. Dew, Emma C. Dew, Kathleen McLaughlin, Michael McLaughlin, David McLaughlin, Bonnie McLaughlin and Melinda McCall, filed a motion for summary judgment. Attached to the motion were affidavits by Charles and Janice Gayton and William C. Dew.
 {¶ 5} On June 2, 2003, appellant filed a memorandum contra appellees' motion for summary judgment. Appellees filed a reply memorandum on June 11, 2003. By entry filed June 19, 2003, the probate court granted summary judgment in favor of appellees.
 {¶ 6} On appeal, appellant sets forth the following four assignments of error for review:
Assignment of Error No. 1
The trial court erred in granting summary judgment to defendants-appellees since the evidence, including evidence contained within defendants-appellees' own affidavits, construed in plaintiff-appellant's favor, shows there to be genuine issues of material fact.
Assignment of Error No. 2
The trial court erred in failing to consider the depositions filed by plaintiff-appellant, and instead, erroneously stating that no depositions had been filed.
Assignment of Error No. 3
The trial court erred in making findings based solely upon alleged defense witness' self-serving opinions of what the facts were, rather than upon admissible evidence of the alleged facts construed in plaintiff-appellant's favor.
Assignment of Error No. 4
The trial court's summary judgment entry is contrary to law.
 {¶ 7} An appellate court's review of a trial court's disposition of a motion for summary judgment is de novo. Doe v.Shaffer (2000), 90 Ohio St.3d 388, 390. Pursuant to Civ.R. 56(C), before summary judgment may be granted, a court must determine that: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence construed most strongly in his or her favor. State ex rel. Grady v. SERB (1997),78 Ohio St.3d 181, 183.
 {¶ 8} In order to prevail on a motion for summary judgment, the party moving for summary judgment carries the initial burden to inform the trial court of the basis for the motion and to point to parts of the record showing that no genuine issue of material fact exists. Rybacki v. Allstate Ins. Co., Medina App. No. 03CA0079-M, 2004-Ohio-2116, at ¶ 6, citing Dresher v. Burt
(1996), 75 Ohio St.3d 280, 293-294. Further, "[w]here the non-moving party would have the burden of proving a number of elements in order to prevail at trial, the party moving for summary judgment may point to evidence that the non-moving party cannot possibly prevail on an essential element of the claim."Rybacki, supra. Once the moving party satisfies its burden, the non-moving party must then present evidence to show that there is a genuine issue of material fact as to that element. Id.
 {¶ 9} Appellant's assignments of error are interrelated, and, therefore, will be considered together. At the outset, we note that appellant's first three assignments of error all challenge the probate court's granting of summary judgment in favor of appellees on the basis that the court apparently failed to consider certain depositions filed with the court. Specifically, appellant argues that, despite the fact that the depositions of Charles and Janice Gayton were filed on June 5, 2003, the probate court's decision granting summary judgment states in part: "no depositions have been filed with this Court." Appellant acknowledges, however, that, given this court's de novo review of summary judgment, any purported error by the probate court in ignoring the depositions can be corrected by our independent review of the evidence. We therefore now undertake a de novo review of the evidence to determine whether, based upon the evidence submitted, any genuine issues of material fact remain for trial regarding appellant's claims of undue influence or lack of testamentary capacity.
 {¶ 10} In order to challenge a will, the will contestant must prove that the testator lacked the capacity to create the will.Lakes v. Ryan, Butler App. No. CA2002-05-118, 2003-Ohio-504, at ¶ 9. In considering the issue of testamentary capacity, the standard employed is whether the testator had sufficient mind and memory: "(1) to understand the nature of the business in which he was engaged; (2) to comprehend generally the nature and extent of his property; (3) to hold in his mind the names and identities of those who have a natural claim on his bounty; and (4) to be able to appreciate his relationship to the members of his family."Bustinduy v. Bustinduy (Dec. 18, 1998), Champaign App. No. 98-CA-21, citing Gannett v. Booher (1983), 12 Ohio App.3d 49,56. Further, "[t]estamentary capacity is determined as of the date of the execution of the will." Smith v. Lommerse (Dec. 30, 1993), Wood App. No. 93WD027, citing Kennedy v. Walcutt (1928),118 Ohio St. 442, at paragraph two of the syllabus, overruled on other grounds, Krischbaum v. Dillon (1991), 58 Ohio St.3d 58,64, fn. 9.
 {¶ 11} A will contestant claiming undue influence carries the burden of demonstrating the following elements: "(1) a susceptible testator, (2) another's opportunity to exert influence on the testator, (3) the fact that improper influence was exerted or attempted, and (4) a result showing the effect of the improper influence." Boley v. Kennedy, Crawford App. No. 3-02-35, 2003-Ohio-1663, at ¶ 21.
 {¶ 12} Evidence as to decedent's mental capacity on the day the will was executed was provided through the affidavits and deposition testimony of attorney Gayton and his wife, as well as the affidavit of Dew. Attorney Gayton also provided background information regarding two previous wills he had prepared for decedent. According to representations in Gayton's affidavit, he first met decedent in 1993, when he went to her home and she expressed a desire to execute a new will. Decedent's husband had passed away prior to 1993, and Gayton discussed with her items she wanted in the will. Gayton subsequently returned to decedent's home to discuss additional changes requested by decedent; Gayton's wife, who worked with Gayton as a legal assistant, accompanied him to decedent's house. After preparing the document, Gayton and his wife met with decedent at her home on June 28, 1993, and decedent read the will and executed it in their presence. Gayton stated that he found decedent "to be a very active, alert and well spoken lady" at that time.
 {¶ 13} Gayton and his wife again met with decedent at her home in 2000 to discuss changes decedent wanted to make to her will. At his direction, Gayton's wife prepared the changes to the will and they returned to decedent's home where she read and executed the will. Gayton was "again impressed by her alertness and mental awareness."
 {¶ 14} In 2001, Gayton and his wife again met with decedent at her home to discuss further changes she wished to make regarding disposition of her property. Gayton reviewed decedent's current will with her, and decedent made adjustments in the amount of financial bequests to her friends, along with other changes. Gayton's wife made the changes as requested, and they returned to decedent's home on June 19, 2001. Decedent "reviewed the will at length" and discussed it with Gayton. Decedent indicated she was satisfied with the changes and signed in the presence of Gayton and his wife. William Dew was also present at the time of the signing. Gayton expressed his belief that decedent "knew what she was doing when she instructed me on the changes to the will to be prepared for her and that she knew what she was doing when she executed the will. She was alert, bright and under no duress or undue influence when she signed the will." Janice Gayton similarly stated in her affidavit that decedent knew what she was doing when she gave instructions regarding changes to her will, and that decedent was alert and bright at the time she signed the will.
 {¶ 15} Dew stated in his affidavit that he met decedent through his friendship with decedent's husband, Kenneth Stormont. Decedent and her husband did not drive, so Dew and his wife would regularly take them to grocery stores, the bank and other places. On April 10, 1989, decedent's husband died, and, after his death, decedent and Dew's wife became good friends. According to Dew, decedent was a "very bright and alert person," and she was able to care for herself and live in her home until she suffered a fall on February 24, 2002. On that date, Dew and his wife had gone to decedent's home for a visit when they discovered she had fallen; decedent was treated at Riverside Hospital and then released to Whetstone Convalescence Center.
 {¶ 16} Dew was present when decedent signed her last will and testament on June 19, 2001. According to Dew, decedent read the will and discussed the contents with Gayton and his wife, and "told them that she wanted by her will to give to those persons that had been kind to her and had been her friends during the years." Dew stated that, having known decedent for approximately 15 years, and seeing her several times a week during that time, he believed "she was fully aware of the nature and consequences of executing the will on June 19, 2001."
 {¶ 17} In support of her claim that decedent lacked testamentary capacity, appellant contends that decedent's will contained bizarre clauses and language. For example, appellant points to language in the will referring to any interests decedent might have in accounts "held jointly in my name and that of my spouse." Appellant contends that, because decedent was a widow at the time of the 2001 will, this language raises the inference that decedent was unaware her spouse was not living. However, attorney Gayton stated in his deposition testimony that he explained to decedent, at the time the will was prepared, that he put such language in all of the wills he prepared based upon information he had obtained at a legal seminar. Specifically, Gayton stated as follows:
I told her that the reason I put that in here, and I told her I would put that in there, was there had been a case where I had been to a seminar somewhere that discussed that that would stop people from making executors go out and sue people for things like that and say they should come into the estate. And that's because there had been a lot of litigation on that. And that it was just a block paragraph I put in all my wills after that particular time.
(Charles Gayton Depo., at 54.)
 {¶ 18} In light of Gayton's uncontroverted explanation that it was his standard practice to insert this boilerplate language in all of his wills, and given the fact that decedent's will contains no other reference to a spouse, we find unpersuasive appellant's contention that the subject language raises an inference of incapacity.
 {¶ 19} In arguing that a genuine issue of material fact exists with respect to decedent's alleged lack of testamentary capacity, appellant also points to the fact that decedent's death certificate listed "Senile Dementia" as a "significant condition contributing to death." However, there is no evidence in the record as to how this condition may have affected decedent's mental capacity approximately ten months earlier when she executed the will. We note that appellant did not depose or obtain an affidavit from the physician who filled out the death certificate, and we find the information on the death certificate does not, standing alone, raise a genuine issue of material fact. See, e.g., In re Estate of Hall (Tex.App. 2001), No. 05-98-01929-CV (evidence that decedent suffered from dementia or Alzheimer's disease on day she executed will, "standing alone, is insufficient to raise a fact issue as to a lack of testamentary capacity without some evidence that the disease rendered her incapable of knowing her family or her estate or understanding the effect of her actions"). See, also, Wise v. Riddlebaugh
(May 29, 1997), Marion App. No. 9-97-6 ("[w]hile appellants brought out the fact that [decedent] was diagnosed with dementia approximately ten months after she executed the will in controversy, this is no evidence of the decedent's state of mind at the time of the execution of her will"); Moore v. Green
(Tenn.App. 2004), No. M2000-03203-COA-R3-CV (examination and dementia diagnosis ten months after will was executed "is too remote in time and does not provide more than a `glimmer' of evidence" that decedent lacked testamentary capacity at the time she executed will).
 {¶ 20} Again, the only evidence in the record addressing the issue of decedent's testamentary capacity at the time she executed her will is contained in the affidavits and deposition testimony of Gayton and his wife, and the affidavit of Dew. Appellant offered no evidence that decedent was affected by dementia on the date she executed the will, and the uncontradicted statements by the individuals who witnessed her sign the will indicate she was alert, oriented, and had testamentary capacity. Accordingly, the evidence presented was insufficient to create a genuine issue of material fact as to whether decedent lacked testamentary capacity on June 19, 2001.
 {¶ 21} As noted, appellant also contends that genuine issues of material fact remain regarding whether decedent was subject to undue influence from others. More specifically, in her memorandum contra appellees' motion for summary judgment, appellant argued that William Dew had the opportunity to exert influence over decedent, citing the fact that Dew was present during times when attorney Gayton discussed changes to the wills with decedent, and that he was also present during execution of the wills.
 {¶ 22} It has been held "[g]eneral influence, however strong or controlling, is not undue influence unless brought to bear directly upon the act of making the will." West v. Henry
(1962), 173 Ohio St. 498, 501. Further, "[t]he mere existence of undue influence, or an opportunity to exercise it, although coupled with an interest or motive to do so, is not sufficient, but such influence must be actually exerted on the mind of the testator with respect to the execution of the will in question." Id.
 {¶ 23} According to representations made in the affidavits submitted by appellees, decedent made the bequests at issue out of her desire to give to individuals who had been friends to her and who had shown kindness to her over the years. As noted, attorney Gayton, who prepared the will at issue, stated that decedent articulated to him her reasons for wanting to change her will, and Gayton stated that decedent knew what she was doing when she gave instructions on the changes. In response, appellant, at most, alleged suspicions that Dew had the opportunity to exert influence, but appellant failed to come forward with any affidavits, testimony or other evidence suggesting that Dew actually exerted undue influence on decedent in drafting the will. Nor was it sufficient for appellant to show that Dew may have shared a close friendship with decedent, as "[a]nyone who desires to draft a will is `influenced' to a certain extent by relationships with friends, family, social and religious groups, and many other environmental factors." Adamsv. Woollard (Apr. 28, 1995), Lucas App. No. L-94-024. Rather, under Ohio law, "[t]he undue influence must so overpower and subjugate the mind of the testator as to destroy his free agency and make him express another's will rather than his own." Id.
 {¶ 24} Furthermore, appellant acknowledged in her deposition testimony that she had no knowledge that the will executed by decedent on June 19, 2001, was the result of undue influence or duress. In fact, as noted by the trial court, appellant acknowledged that she had never met decedent during her lifetime, and further conceded during her deposition that she only learned of the death of decedent after receiving a letter from counsel in the underlying action. Here, construing the evidence most strongly in favor of the non-moving party, appellant has failed to present evidence sufficiently probative with respect to an element of undue influence, as the record supports the probate court's determination that appellant's allegation that Dew exerted or attempted to exert undue influence was based upon mere "conjecture, and lacked independent proof of the alleged facts."
 {¶ 25} As appellant has failed to show evidence demonstrating genuine issues of material fact as to the claims of lack of testamentary capacity and undue influence, we find that reasonable minds can come to but one conclusion, and that conclusion is adverse to appellant. Finally, having reviewed the evidence de novo, this court finds that any purported failure by the probate court to review the depositions of Charles and Janice Gayton did not result in prejudice to appellant.
 {¶ 26} Based upon the foregoing, appellant's four assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas, Probate Division, is hereby affirmed.
Judgment affirmed.
Klatt and Watson, JJ., concur.