OPINION
{¶ 1} Carl Crowe is appealing from the decision of the Montgomery County Common Pleas Court, Probate Division, finding, against the contentions of the plaintiff, that the November 27, 2000, Will executed by Charlie Crowe is his Last Will and Testament.
 {¶ 2} The facts of the case and the reasoning of the Probate Court are set forth in its following findings and decision:
 {¶ 3} "This matter came before the court for trial on September 8, 2003. Plaintiff, Carl Crowe was present and represented by counsel. Defendants, Allyn Wagner with counsel, John Cruse, and Edna Walters were present.
 "FINDINGS OF FACT {¶ 4} "This is a will contest. Plaintiff is alleging that the Last Will and Testament of the decedent that was admitted to probate is not the Last Will and Testament of Charlie Crowe because he lacked the necessary testamentary capacity and was under severe pressure and undue influence to execute said document.
 {¶ 5} "The decedent, Charlie Crowe, had twelve siblings. None of these siblings were especially close to Charlie. The family was divided into a Kentucky branch and an Ohio branch and usually the two did not mix unless they were at a funeral. Edna was the only sibling that mixed with both groups on a regular basis because at one time or the other she had lived in both states. Charlie and his wife enjoyed their life together but had no children.
 {¶ 6} "Charlie's wife's nephew, John Cruse, owns a landscaping business and maintained the decedent's yard. He also visited the decedent and his aunt on a regular basis. Herb Johns was Charlie's friend and called John to let him know when Charlie was in the hospital. John visited Charlie at least three days a week while he was hospitalized. John possessed Charlie's power of attorney.
 {¶ 7} "In May 2001 decedent and his wife contacted defendant, Attorney Allyn Wagner, to prepare similar wills. These wills were executed on May 15, 2001. The only difference in the wills was that Charlie's wife received his entire estate upon his death and in the wife's will Charlie received the entire estate upon her death. In the event that either predeceased the other, fifty percent (50%) was to be divided between the wife's two nephews, James Rike and William Cruse, and the other fifty percent (50%) was to be divided between Charlie's brother, Carl, and his sister, Edna.
 {¶ 8} "In October 2001, Charlie knew that he was suffering from terminal cancer as he had cancer in both lungs. At this same time, Charlie put his wife in a nursing home. He called his sister, Edna and told her this and she came up from Kentucky to visit him. They talked about his family and his health. He also confided in Edna that he had written a will and she and Carl were in it. Edna did not tell Carl, but did tell another brother.
 {¶ 9} "In November 2001, while Charlie was in the Veterans' Administration Hospital, he related to Edna his wishes about his final disposition. On November 16, 2001 Edna visited Charlie and felt he was doing better. They met with the social worker, but did not discuss making a new will.
 {¶ 10} "On Charlie's last day, John arrived after lunch to visit, and discovered that Charlie had not eaten his lunch. This was a bad sign to John especially when Charlie asked him if the funeral arrangements were complete and the headstone purchased. Then the VA was moving Charlie to the hospice side of the floor. John called Edna at Charlie's request to tell her that he had been moved.
 {¶ 11} "After being moved to the hospice side of the floor, on November 27, 2001, Charlie decided to execute a new will. A week earlier Charlie's wife had died. The social worker, Margaret Witt, in the hospice unit was instrumental in getting the new will drafted and executed. At the request of a male social worker, John Cruse had attempted to call Charlie's attorney, Allyn Wagner, but could not locate him. John was not in the room when the will was executed but was outside in the lobby. He knew that Charlie was executing a will, but John did not know that Charlie had a previous will.
 {¶ 12} "The witnesses to the will testified that Charlie had a hard time holding his head up, was drooling and was in pretty bad shape. Charlie had a stroke at age 51 and it was difficult to understand him when he spoke. While he was sick, he had to be suctioned out to allow him to be better understood. He had been suctioned out just before or after moving to the hospice side. Neither witness can remember who was in the room at the time the will was executed. Someone was reading the will, while Charlie nodded his head to each provision and signed the will without aid. The witnesses were credible in not remembering because at the time they were visiting their relative who was also terminally ill. About three to four hours after the execution of this will, Charlie died.
 {¶ 13} "Edna arrived at the hospital about two hours before Charlie died. Charlie recognized Edna when she arrived and told her `it won't be long now.' Charlie did not tell Edna that he had executed a new will. Charlie lost consciousness the last fifteen minutes of his life.
 {¶ 14} "In the new will, Charlie left the majority of his estate to his sister Edna and left John Cruse who was not mentioned in his first will, $25,000. The VA hospice unit was to receive $2500 and he established a scholarship for education for any Crowe family member born in the last two years from the date of the Will. Herb Johns was to get his tools, refrigerator freezer and everything in the garage except the car. He also included everyone that was in his first will but in different amounts. Carl Crowe was to receive $2500 and his wife's two nephews were to receive $1000 each.
 "CONCLUSIONS OF LAW {¶ 15} "Pursuant to R.C. § 2107.02, to make a valid will, a person must be at least eighteen years of age, of a sound mind and memory, and not under restraint. The plaintiff alleges that Charlie lacked testamentary capacity to make a will. A sound mind is determined by four criteria as set forth in Niemes v. Niemes
(1917), 97 Ohio St. 145, 119 N.E. 503:
 {¶ 16} "1. The testator must understand the nature of the business in which he is engaged;
 {¶ 17} "2. He must comprehend generally the nature and extent of his property;
 {¶ 18} "3. He must hold in his mind the names and identity of those who have a natural claim on his bounty; and
 {¶ 19} "4. He must be able to appreciate his relationship to members of his family.
 {¶ 20} "It is clear from the facts that Charlie knew that he was dying. He understood the nature and extent of his property. In fact, the November will was more in detail than the previous will. He did not include his wife in the new will as she had predeceased him by a week. Certainly he was well aware of those who had a natural claim on his bounty. By identifying persons by their relationship to him, he clearly understood and appreciated his relationship to the members of his family. The Court finds that the plaintiff did not sustain its burden of proof by clear and convincing evidence. The Court finds that Charlie possessed a sound mind and the necessary testamentary capacity to make a will.
 {¶ 21} "The plaintiff alleges that Charlie was unduly influenced into changing his will. The four-part test of undue influence and restraint is:
 {¶ 22} "1. A susceptible testator;
 {¶ 23} "2. The opportunity for another to exert undue influence;
 {¶ 24} "3. The fact that undue influence was exerted or attempted; and
 {¶ 25} "4. The result showing the effect of undue influence.
 {¶ 26} "West v. Henry (1962), 173 Ohio St. 498,184 N.E.2d 200.
 {¶ 27} "The evidence demonstrated that Charlie appreciated those who visited him, assisted him in preparing for his final disposition, demonstrated their affection and took care of him during his last illness. There is no evidence that Charlie made testamentary disposition that he would not have otherwise made. The Court finds that Plaintiff has failed to sustain his burden of proof by clear and convincing evidence on this issue. Therefore, the Court finds that Charlie was not under undue influence and restraint when he executed the November 27, 2001 will.
 {¶ 28} "The Court finds against the plaintiff. The Court finds that the November 27, 2001 will executed by Charlie Crowe is his Last Will and Testament." (Docket 23).
 {¶ 29} The brief of the plaintiff-appellant is in violation of App.R. 19 as it is single-spaced. Our usual practice is to reject such briefs and require the attorney to reformat it and resubmit it. However, because the brief is fairly short even though single-spaced and the time between submission of the briefs to the court and its decision date was also fairly brief, we abandoned the normal practice in this case and accepted the brief as written. However, this does not mean that we are abandoning App.R. 19 and our usual practice, and the responsible attorney is hereby duly warned to follow the appellate rules and never submit a brief again to this court that is single-spaced.
 {¶ 30} The following two assignments of error were brought by the appellant:
 {¶ 31} "1. The trial court erred in its decision finding that the purported last will and testament dated November 27, 2001 represented the valid last will and testament of Charlie Crowe by holding the plaintiff-appellant to a higher burden of proof of clear and convincing evidence on all issues rather than a preponderance of evidence standard.
 {¶ 32} "2. The trial court decision is against the manifest weight of evidence presented and does not accurately reflect the testimony given and exhibits which show that Charlie Crowe did not sign the purported last will and testament on November 27, 2001 of his own free will, nor did he have testamentary capacity to do so unless undue influence was exerted upon him."
 {¶ 33} This case bears a very close, in fact, almost eerie resemblance to the facts in the case of Buckingham v.Middlestetter (Mar. 22, 1993), Montgomery App. No. 13575, wherein Attorney Bradley Schaeffer, a well-known and highly regarded lawyer in the Dayton area prepared and oversaw the execution of one of his client's Wills who was in the process of dying, following virtually the same procedure as in the case sub judice. That case, however, came up on a summary judgment decision and we, therefore, sent it back because there was some possible conflicting evidence of testamentary capacity. We did find in that case, however, that the granting of summary judgment to the defendant on the issue of undue influence was correct.
 {¶ 34} We stated in Buckingham that "in order to demonstrate undue influence, it must appear that the free agency of the testator is destroyed, and this may be done by importunity, overpersuasion, or moral coercion of any kind which would constrain a person to do an act against his will . . . The mere existence of undue influence or an opportunity to exercise it, although coupled with an interest or motive to do so, is not sufficient to invalidate a will; such influence must actually be exerted on the mind of the testator with respect to the execution of the will and, in order to invalidate the will, it must be shown that the undue influence resulted in the make of testamentary dispositions which the testator would not otherwise have made." Id. 7. The plaintiff-appellant here presents essentially the same arguments presented by Buckingham in that case, and we reject them on the same grounds. No actual evidence of any undue influence was presented to the court. The Probate Court even commented favorably on the credibility as to the witnesses to the execution of the Will who testified on behalf of the defendant. The second assignment of error is overruled.
 {¶ 35} As to the first assignment of error, it is probably true that the Probate Court should not have used the words "clear and convincing evidence" in its decision, but since it is clear from the record and the decision of the court that the plaintiff did not prove any part of his case by a preponderance of the evidence, the use of the words "clear and convincing" was a harmless error. The first assignment of error is overruled, and we adopt the decision and opinion of the Probate Court as our own and approve it.
Judgment affirmed.
Brogan, J. and Grady, J., concur.