OPINION
{¶ 1} This timely appeal comes for consideration upon the record in the trial court, *Page 2 
the parties' briefs, and their oral arguments before this court. Defendant-Appellant, Ann Marie Theis, appeals the decision of the Mahoning County Court of Common Pleas, Probate Division, that entered judgment after a jury trial for Defendant-Appellee, Albert L. Stanko, Jr., individually and as Executor of the Estate of Albert L. Stanko, Sr., in Theis' will contest action. On appeal, Theis contends that the trial court erred when making a variety of evidentiary rulings.
 {¶ 2} We cannot reverse a decision based on evidentiary matters unless an erroneous ruling affects the adverse party's substantial rights. In this case, Theis' challenge to the will was based on her belief that it was executed while the decedent was under undue influence. Theis failed to prove either that Stanko improperly exerted or attempted to exert influence or that the decedent's will was affected by the Stanko's influence. Furthermore, none of the evidence she claims was improperly included or excluded from the record address her failure of proof on these issues. Accordingly, none of the errors the trial court may have committed affected Theis' substantial rights. Accordingly, the trial court's decision is affirmed.
 {¶ 3} Albert Stanko, Sr., fathered four children by two different marriages. Albert Stanko, Jr., and Norma Jean Ladd were the children of the first marriage, Theis and Edward Stanko are the children of his second marriage. The father died on July 5, 2002, but had been predeceased by Ladd.
 {¶ 4} Prior to his death, the decedent was hospitalized in July 1995 for a serious surgery. For many years, he had lived with a woman who died shortly before his hospitalization. In an effort to preserve his property against a common law marriage claim, Theis convinced her father to give her power of attorney and he signed the document while hospitalized, but before his surgery. Theis then contacted the family attorney who prepared a quit-claim deed, which transferred the decedent's real estate to her. The decedent signed this document while still hospitalized, but after the surgery.
 {¶ 5} Subsequently, the decedent signed a sales contract for new windows to be installed in his home, which Theis now owned. In 1997, he was named as a defendant for breach of this contract. The suit was successfully defended because Theis, not the *Page 3 
decedent, owned the property. In its judgment entry, the trial court in that case noted, among other things, that the decedent's ability to read and understand the contract were suspect.
 {¶ 6} After leaving the hospital, the decedent revoked the power of attorney granted to Theis and subsequently filed suit to regain title to the real estate. Stanko assisted the decedent in each of these endeavors. After a trial, Theis and her father settled his claim and she agreed to transfer the property back to him.
 {¶ 7} While this litigation was pending, Theis would visit her father. However, shortly after she arrived, Stanko would also arrive. Theis claims that Stanko both threatened and physically assaulted her during these visits. She knew that Stanko had a violent past; he had been a member of a motorcycle gang in the 1980s and had checked himself into a hospital overnight in the early 1980s so he would not "hurt someone." She also knew that Stanko had wanted the real estate for himself in the early 1980's. Eventually, Theis stopped visiting her father because of Stanko. She tried calling, but heard Stanko answer the phone and threaten to burn her house down. Soon after that, the decedent's phone number was changed to an unlisted number. Theis did not see or speak with her father from June 1998 until his death in July 2002.
 {¶ 8} In March 2000, Stanko took his father to the offices of Attorney James Lanzo to prepare a will. Attorney Lanzo had been representing the decedent in his lawsuit against Theis. Attorney Lanzo spoke with the decedent while Stanko and Stanko's wife were both present. The decedent told Attorney Lanzo that he wanted to leave all his property to Stanko. Attorney Lanzo prepared a will in accordance with the decedent's wishes and read it to him at a subsequent office visit. The decedent executed the will on March 28, 2000.
 {¶ 9} The March 2000 will was admitted to probate on March 13, 2003, and Theis filed a will contest action on June 2, 2003. In her complaint, Theis claimed that the testator did not have testamentary capacity, that the will was the product of undue influence, that it was procured by fraud, and that it was not properly executed. Stanko moved for summary judgment on October 14, 2004, and the trial court granted judgment *Page 4 
against each of Theis' claims, except that for undue influence.
 {¶ 10} The matter proceeded to a jury trial on the issue of undue influence. At the conclusion of the trial, the jury rendered a verdict in Stanko's favor. The trial court entered judgment on this verdict on December 9, 2005.
 {¶ 11} In her sole assignment of error on appeal, Theis argues:
 {¶ 12} "The rulings of the trial court on certain evidentiary matters were prejudicial to Appellant and denied her a fair trial."
 {¶ 13} Theis contends that the trial court made the following nine errors regarding the introduction of evidence and that these errors individually and cumulatively: 1) admitting evidence of prior unrelated litigation Theis had instituted; 2) admitting evidence regarding a period of time when Theis' daughter did not live in her home; 3) admitting evidence of Theis' character; 4) admitting evidence regarding attorneys fees she paid to defend her father from suit; 5) allowing two witnesses opine on whether they believed the decedent was acting while under undue influence; 6) allowing testimony regarding the trial court's decision to grant summary judgment against Theis' other challenges to the will; 7) excluding a letter written in 1984 which indicated that Stanko wanted the decedent's property at that time; 8) admitting testimony that none of the other potential heirs challenged the will; and, 9) excluding evidence of Stanko's past membership in a motorcycle gang and self admission into a mental hospital.
 {¶ 14} Decisions regarding the admissibility of evidence are within a trial court's broad discretion and will not be reversed absent an abuse of that discretion. Beard v. Meridia Huron Hosp., 106 Ohio St.3d 237,2005-Ohio-4787, at ¶ 20. The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219. Furthermore, an appellate court will not disturb a judgment, even if the trial court abused its discretion when admitting or excluding certain evidence, unless the abuse affected the substantial rights of the adverse party or is inconsistent with substantial justice. Beard at ¶ 20; see also Civ.R. 61 ("No error in either the admission or the exclusion of evidence * * * is ground for * * * disturbing a judgment or order, unless *Page 5 
refusal to take such action appears to the court inconsistent with substantial justice.").
 {¶ 15} We must first explain the issues being litigated in order to show that any alleged error is harmless. A will can only be challenged by proving that the testator lacked the capacity to create the will.Giurbino v. Giurbino (1993), 89 Ohio App.3d 646, 658. One of the ways to prove lack of testamentary capacity, and the only one at issue during the trial of this case, is to show undue influence. In order to establish that a will has been executed while under undue influence, a plaintiff must prove 1) the decedent was a susceptible testator; 2) the beneficiary had the opportunity to exert influence; 3) the beneficiary improperly exerted or attempted to exert influence; and, 4) the decedent's will was affected by the beneficiary's influence. Lah v.Rogers (1998), 125 Ohio App.3d 164, 171; see also West v. Henry (1962),173 Ohio St. 498, 500. Undue influence can be exercised by importunity, overpersuasion, or moral coercion of any kind which would constrain a person to do an act against his will. Raymond v. Hearon (1928),30 Ohio App. 184, 189.
 {¶ 16} "General influence, however strong or controlling, is not undue influence unless brought to bear directly upon the act of making the will. If the will or codicil, as finally executed, expresses the will, wishes and desires of the testator, the will is not void because of undue influence.
 {¶ 17} "The mere existence of undue influence or an opportunity to exercise it, although coupled with an interest or motive to do so, is not sufficient, but such influence must be actually exerted on the mind of the testator with respect to the execution of the will in question. It must be shown that such influence, whether exerted at the time of the making of the will or prior thereto, was operative at the time of its execution or was directly connected therewith. It must be shown that undue influence was exercised with the object of procuring a will in favor of particular parties." West at 501.
 {¶ 18} Issues related to undue influence are generally determined upon circumstantial evidence and the inferences drawn from a full presentation of facts that may be inconclusive when viewed separately.Board of Education of Pickaway Tp. Rural School Dist. v. Phillips
(1921), 103 Ohio St. 622, 626. However, a person challenging a *Page 6 
will because of undue influence must prove more than alleged suspicions that a beneficiary had the opportunity to exert influence; they must prove that the beneficiary actually exerted undue influence on decedent in drafting the will. Martin v. Dew, 10th Dist. No. 03AP-734,2004-Ohio-2520, at ¶ 23. Nor is it sufficient for the person challenging the will to show that the beneficiary may have shared a close friendship with decedent, as "anyone who desires to draft a will is `influenced' to a certain extent by relationships with friends, family, social and religious groups, and many other environmental factors." Id., quotingAdams v. Woollard (Apr. 28, 1995), 6th Dist. No. L-94-024, at 7.
 {¶ 19} A review of the record reveals a distinct lack of evidence that Stanko improperly either exerted or attempted to exert influence over the decedent or that the decedent's will was affected by the Stanko's influence. According to Theis, her father was a sick man whose judgment was not the best at this time in his life. Stanko was a man with violent tendencies who had wanted the decedent's property for years. Theis believes Stanko was the motivating factor behind her father's decision to both revoke her power of attorney and file suit to reclaim the property. Stanko was so violent toward her that she eventually felt that it was not safe for her to visit their father, especially after Stanko moved into their father's home. Theis' efforts to call her father on the phone were also thwarted, she assumes, by Stanko since her father's phone number was changed to an unlisted number.
 {¶ 20} Theis admits that she had no contact with her father after June 1998 until his death in July 2002. She further admits that she has no knowledge of what went on in her father's home during that time period. The only facts she can prove concerning the execution of the will is that it was executed in March 2000 in the offices of Attorney Lanzo in the presence of both Stanko and his wife, that Stanko took the decedent to Attorney Lanzo for the purposes of drafting the will and discussed the matter in Stanko's presence, and that Stanko was named the sole beneficiary of the will.
 {¶ 21} These facts are not very different than others which Ohio's appellate courts have addressed in the past. For instance, inBuckingham v. Middlesetter (Mar. 22, 1993), *Page 7 
2nd Dist. No. 13575, at 6, the plaintiff proved "(1) the fact that [the new will] was a `drastic departure' from prior wills, which had benefited him, (2) the testator's poor health, (3) the fact that [the alleged influencer] instructed Attorney Schaeffer on its terms, (4) the fact that family members benefited in the will were frequently with [the decedent], (5) and the limited communication of which [the decedent] was capable."
 {¶ 22} On appeal, the court affirmed the trial court's decision to grant summary judgment to the defendant.
 {¶ 23} "The evidence on which Plaintiff relies demonstrates a possible existence of undue influence and an opportunity to exercise it, coupled with a motive and opportunity to do so. However, it does not demonstrate that undue influence was actually exerted on the mind of this testator or that the will she executed was a product of it. Those matters must be shown to prove undue influence." Id. at 7.
 {¶ 24} Recently, the Second District applied Buckingham to a case whose facts bore an "almost eerie resemblance" to those inBuckingham. See Crowe v. Wagner, 2nd Dist. No. 20151, 2004-Ohio-5769, at ¶ 33-34.
 {¶ 25} Lakes v. Ryan, 12th Dist. No. CA2002-05-118, 2003-Ohio-0504, also bears similarities to this case. In Lakes, the person challenging the will had no contact with the testator for two years, during which time the testator executed a will that disinherited her. When the testator later died, she alleged that the will was executed while the testator was under the undue influence of the will's beneficiaries. As proof, she offered testimony from the testator's caretaker over the relevant period, who stated that the testator told her that the beneficiaries "physically abused him, removed all the telephones from his residence, disconnected his alarm system, withheld his medication for their own use, locked him outside of his home at night in the rain, and `terrorized' him." Id. at ¶ 13. However, the caretaker also stated that the testator never showed any signs of mental impairment. Id. The appellate court affirmed the trial court's decision to grant summary judgment, holding that these facts were insufficient to show that neither the beneficiaries nor anyone else had exerted any improper influence upon the testator's act of executing his will. Id. at ¶ 15. *Page 8 
 {¶ 26} In contrast, in Rich v. Quinn (1983), 13 Ohio App.3d 104, the plaintiff provided sufficient evidence that the testator was, in fact, unduly influenced when executing a will. In that case, heirs challenged a will, claiming that one brother unduly influenced another to name him the sole heir. They introduced evidence showing that the beneficiary moved in with the formerly social testator and, over time, isolated the testator from friends and family and did not allow the testator to visit with others without being present. The testator at one point complained that he was a "prisoner" in his own home. The testator changed his will to name his brother the sole beneficiary the same day that the brother discovered a prior will which left him only half the estate. After the will was changed, the beneficiary told a disinherited heir, "You might as well forget what Sammy wanted to do for you because I fixed it. You're not going to get anything." Id. at 103-104. On appeal, the Twelfth District concluded that the trial court erred in directing a verdict for the defendants because there was a jury question regarding whether the testator was unduly influenced.
 {¶ 27} Many of the facts in Rich which would allow a jury to conclude that the testator was unduly influenced, such as the rush to change the will once it was discovered that the defendant was not the sole devisee and the subsequent comments to disinherited heirs, are absent from this case. After reviewing the record, we conclude that Theis failed to introduce any evidence that Stanko actually exerted or attempted to exert undue influence over the testator at the time the will was executed.
 {¶ 28} None of the issues Theis raises on appeal affect this conclusion. For example, any evidence which the trial court admitted attacking her character, including evidence of both prior litigation and Theis' relationship with her father, have no bearing on whether Stanko improperly exerted undue influence over the testator at the time the will was executed. Accordingly, any error in the admission of this evidence would be harmless. Likewise, evidence of the amount of attorney fees she paid in prior litigation, testimony regarding the other claims she had brought against the estate which had been dismissed on summary judgment, and testimony regarding whether other heirs had contested the will do not affect Theis' failure to prove the essential element of an undue *Page 9 
influence claim and any error in the admission of this evidence would also be harmless.
 {¶ 29} There are three categories of evidentiary rulings which, at first blush, appear to more directly relate to Theis' failure to prove that Stanko improperly exerted undue influence over the testator at the time the will was executed. But even assuming arguendo that the trial court erred in the manner Theis claims, any such error is harmless.
 {¶ 30} First, Theis contends that the trial court erred by allowing lay witnesses to give an opinion on whether the testator was unduly influenced into executing the will. But even if this court assumes arguendo that admitting this evidence was error, the admission of this evidence did not affect whether Theis proved that Stanko acted improperly. In other words, Theis could only be harmed by the admission of this evidence if she had proven that the testator was unduly influenced into executing the will. Since Theis did not prove this fact, she could not have been harmed by the admission of this evidence.
 {¶ 31} Second, Theis contends the trial court erred by not admitting a letter indicating that Stanko wanted the testator's property in 1984. Any error in the exclusion of this evidence is also harmless since this evidence only goes to show whether Stanko had motive to unduly influence his father's decisions, not whether he actually exerted or attempted to exert such influence.
 {¶ 32} Third, Theis argues that the trial court should have allowed her to introduce evidence showing that Stanko had been in a motorcycle gang and that he checked himself into a hospital overnight in the early 1980s so he would not "hurt someone." In this case, the trial court allowed Theis to testify about the times when Stanko had either threatened or physically harmed her. Theis further testified that Stanko made her fear for her life. The testimony which was excluded would be further proof that Stanko had a violent temperament.
 {¶ 33} However, even if it was error for the trial court to exclude this evidence, it is improper to rely solely on character evidence to prove that someone acted in accordance with that character. Evid.R. 404(A). Stanko's allegedly violent nature does not demonstrate that he was violent toward the testator or that he unduly influenced the testator when the will was executed. Accordingly, any error in this regard would also be *Page 10 
harmless
 {¶ 34} In conclusion, Theis attacks the trial court's judgment, claiming that it erred when making a variety of evidentiary rulings, but these errors were all harmless. Theis failed to introduced sufficient evidence showing that Stanko unduly influenced the testator when the will was executed. None of the evidentiary issues which Theis raises appears to address her failure of proof on this point. Accordingly, any error in those rulings would not affect her substantial rights. Theis' sole assignment of error is meritless and the judgment of the trial court is affirmed.
Waite, J. concurs.
Reader, J., retired of the Fifth District Court of Appeals, sitting by assignment. concurs.