**NEUMEYER et al., Appellants,**

v.

**ESTATE OF PENICK et al., Appellees.**

[Cite as *Neumeyer v. Estate of Penick,* 180 Ohio App.3d 654, 2009-Ohio-321.]

Court of Appeals of Ohio,
Fifth District, Licking County.

No. 07–CA–146.

Decided Jan. 23, 2009.

Bailey Cavalieri L.L.C., Dan L. Cvetanovich, W. Evan Price II, Robert R. Dunn, and Tiffany C. Miller, for appellants.

Baker & Hostetler L.L.P., Robert M. Kincaid Jr., and Jessie Morgan Gabriel, for appellee Licking County Foundation.

Porter Wright Morris & Arthur L.L.P., David S. Bloomfield Jr., Elizabeth L. Moyo, and Lori L. Kimm, for appellee Park National Bank.

Richard Cordray, Attorney General, and Jason Small and Scott Branam, Assistant Attorneys General, for appellee the Ohio Attorney General.

HOFFMAN, Presiding Judge.

{¶ 1} Plaintiffs-appellants Suzanne Rae Neumeyer, James Karl Neumeyer, Mark William Neumeyer, and Karen Rae Hammond appeal the October 26, 2007 judgment entry of the Licking County Court of Common Pleas in favor of

defendants-appellees Park National Bank, executor of the estate of Raymond H. Penick, deceased, and trustee of the Raymond H. Penick Revocable Trust and the Licking County Foundation.

## STATEMENT OF THE FACTS AND CASE

{¶ 2} Raymond H. Penick died on August 30, 2006. Appellant Suzanne Rae Neumeyer is Penick's niece and only surviving relative. Although some of Penick's prior estate plans left the majority of his estate to Neumeyer and her children, on November 12, 2004, Penick executed an amended and restated trust agreement for the Raymond H. Penick Revocable Trust, Park National Bank, Trustee (the "2004 trust"). John S. Gard signed the 2004 trust on behalf of Park National Bank. The 2004 Trust included an $8 million bequest to the Licking County Foundation.

{¶ 3} Penick was 96 years old at the time he executed the 2004 trust. Appellants cite Penick's inappropriate behavior, symptomatic of his inability to appreciate the nature of his relationship with his family, and his increasingly bitter and angry disposition. Appellants argue that Penick's cancellation of insurance on all the properties he owned is evidence of his irrational behavior. In rebuttal, appellees assert that the 2004 trust stemmed from an argument between appellants and Penick, and the changes made to the estate plan revolved around Penick's estate-tax concerns.

{¶ 4} In 2005, Penick gifted his oil and gas business and certain real property to appellant Suzanne Neumeyer. On February 2, 2006, Penick modified his estate plan to reflect the same (the "2006 trust").

{¶ 5} On September 11, 2006, Penick's last will and testament was admitted to probate, and on December 8, 2006, appellants filed the within action in the Licking County Probate Court, challenging the validity of the 2004 trust and the 2006 will and trust. Appellants maintain that Penick lacked testamentary capacity when he executed the 2004 and 2006 documents modifying the distribution of his estate. In the alternative, appellants assert that Penick was subjected to the undue influence of Park National Bank through John Gard, Penick's trust advisor and a vice president of Park at the time Penick executed the instruments.

{¶ 6} On September 6, 2007, Park National Bank moved for partial summary judgment on appellants' claims that Penick was subjected to undue influence. The Licking County Foundation later joined the motion. On October 9, 2007, the Licking County Foundation moved for partial summary judgment on appellants' claim that Penick was incompetent when he executed his 2004 trust, and Park National Bank later joined in that motion.

{¶ 7} On October 26, 2007, the trial court granted both motions for partial summary judgment. Via judgment entry of November 13, 2007, the trial court stayed appellants' lack-of-testamentary-capacity claim related to the February 2, 2006 will and trust pending the appeal in this matter. On the same date, via separate entry, the trial court entered final judgment on both the undue-influence and lack-of-testamentary-capacity claims, including Civ.R. 54(B) language. The trial court concluded that appellants would not be entitled to relief if they prevailed on the remaining testamentary-capacity claim relative to the February 2, 2006 will and trust, because of the trial court's determination the November 12, 2004 trust is valid. On December 10, 2007, appellants filed the within appeal, assigning the following as error:

{¶ 8} "I. The trial court erred in granting summary judgment on appellants' undue influence claims by weighing the evidence and deciding genuine and disputed issues of material fact.

{¶ 9} "II. The trial court erred in granting summary judgment on appellants' lack of testamentary capacity claims by weighing the evidence and deciding genuine and disputed issues of material fact.

{¶ 10} "III. The trial court erred in granting summary judgment on appellants' lack of testamentary capacity claims by ignoring genuine and disputed issues of material fact regarding decedent's delusions concerning his relationship with appellants."

## STANDARD OF REVIEW

{¶ 11} When reviewing a trial court's decision to grant summary judgment, an appellate court applies the same standard used by the trial court, *Smiddy v. Wedding Party, Inc.* (1987), 30 Ohio St.3d 35, 30 OBR 78, 506 N.E.2d 212. This means we review the matter de novo. *Doe v. Shaffer* (2000), 90 Ohio St.3d 388, 738 N.E.2d 1243.

{¶ 12} The party moving for summary judgment bears the initial burden of informing the trial court of the basis of the motion and identifying the portions of the record that demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 662 N.E.2d 264. Once the moving party meets its initial burden, the burden shifts to the nonmoving party to set forth specific facts demonstrating that a genuine issue of material fact does exist. Id. The nonmoving party may not rest upon the allegations and denials in the pleadings, but instead must submit some evidentiary material showing a genuine dispute over material facts. *Henkle v. Henkle* (1991), 75 Ohio App.3d 732, 600 N.E.2d 791.

I

{¶ 13} In the first assignment of error, appellants maintain that Penick was subjected to the undue influence of appellees through the actions of his trust officer, John Gard, on behalf of Park National Bank.

{¶ 14} The Ohio Supreme Court held as follows in *West v. Henry* (1962), 173 Ohio St. 498, 501–502, 20 O.O.2d 119, 184 N.E.2d 200:

{¶ 15} "General influence, however strong or controlling, is not undue influence unless brought to bear directly upon the act of making the will. If the will or codicil, as finally executed, expresses the will, wishes and desires of the testator, the will is not void because of undue influence.

{¶ 16} "The essential elements of undue influence are a susceptible testator, another's opportunity to exert it, the fact of improper influence exerted or attempted, and the result showing the effect of such influence.

{¶ 17} "The mere existence of undue influence, or an opportunity to exercise it, although coupled with an interest or motive to do so, is not sufficient, but such influence must be actually exerted on the mind of the testator with respect to the execution of the will in question. It must be shown that such influence, whether exerted at the time of the making of the will or prior thereto, was operative at the time of its execution or was directly connected therewith. It must be shown that undue influence was exercised with the object of procuring a will in favor of particular parties.

{¶ 18} "It is well stated, as follows, in 94 C.J.S. Wills § 224, p. 1074:

{¶ 19} " 'The fact that the will of the testator of admitted testamentary capacity disposes of his property in an unnatural manner, unjustly, or unequally, and however much at variance with expressions by the testator concerning relatives or the natural objects of his bounty, does not invalidate the will, unless undue influence was actually exercised on the testator.' " (Emphasis omitted.)

{¶ 20} Accordingly, a finding of undue influence requires the following: (1) a susceptible testator, (2) another's opportunity to exert undue influence on the testator, (3) improper influence exerted or attempted, and (4) a result showing the effect of such influence. *Redman v. Watch Tower Bible & Tract Soc. of Pennsylvania* (1994), 69 Ohio St.3d 98, 101, 630 N.E.2d 676.

{¶ 21} Appellants assert that Penick was susceptible to undue influence because of his declining health. Appellants cite a stroke suffered by Penick in 2005, his frailty, his hearing problems, and his poor eyesight. Such evidence may be sufficient to create a genuine issue of material fact regarding whether Penick was susceptible to undue influence at the time he executed the documents. However, appellants merely speculate that Gard must have, in fact, improperly

influenced Penick in his distribution of his estate. Such speculation is not sufficient to rebut a motion for summary judgment.

{¶ 22} Both Gard and attorney Jim Gordon testified in deposition that Penick knew his mind and knew what he wanted in executing his estate plan. Gard testified that Penick contacted him in November 2004 and indicated that he wanted to change his estate plan to include a gift to the Licking County Foundation. Gard then contacted Penick's attorney, Jim Gordon, for an estate-planning meeting. Gard testified that although Penick had some trouble with his hearing, he was "very alert mentally" when they discussed modifications to his estate. Gard testified that Penick was still upset about an argument he had had with Neumeyer.

{¶ 23} Both Suzanne Neumeyer and Mark Neumeyer testified at deposition that the only evidence with respect to their claim of undue influence is the fact that Gard was Penick's advisor at the time of the change to the estate trust. Appellants cite an incident in September 2005, during which Penick desired to gift to appellants the home they rented on the Davis Farm. Appellants assert that Gordon unilaterally destroyed the deed necessary to accomplish the gift, thus demonstrating undue influence. However, upon review of the testimony, we find that the incident does not demonstrate that Gordon substituted his will for that of Penick. Gordon testified:

{¶ 24} "Q. Now, you have mentioned a couple of different times that the plan as Mr. Penick had requested included the transfer at this point in time, that is, mid-December 2005, of the real estate.

{¶ 25} "A. Yes.

{¶ 26} "Q. Did that occur at that point in time?

{¶ 27} "A. It did not. I pulled the plug on this whole procedure because—

{¶ 28} "Q. Well, when you say the whole procedure, you mean just the real estate part?

{¶ 29} "A. On the real estate, yeah.

{¶ 30} "Q. What was the problem? What were the issues there?

{¶ 31} "A. Well, the problem was that we were going to get far in excess of the 1 million-dollar gift tax exemption.

{¶ 32} "Q. That was because of the value of the real estate?

{¶ 33} "A. Value of the real estate, particularly the value of the wells.

{¶ 34} "Q. Okay.

{¶ 35} "A. And had we exceeded it, we would have had to pay—well, we did actually pay some gift tax, but we would have paid a horrendous gift tax.

{¶ 36} "Q. Without the real estate, as I understand this, you were already at a million $85,000.

{¶ 37} "A. That's correct. So we would have had a substantial gift tax, and, unfortunately, it would not—any gift tax paid would not be a credit against the federal estate tax as we determined at that point. And so it would be foolish to go ahead and transfer the real estate at that time.

{¶ 38} "Q. So what did you do?

{¶ 39} "A. I actually this time I had taken some files with me and I was out of state, but I called my partner, Jim Cooper, and told him to just stop everything. They were still awaiting approval for the lot split, so nothing had happened.

{¶ 40} "Q. Did you tell Mr. Penick that that had happened?

{¶ 41} "A. I didn't talk to Mr. Penick at that time. I just told our title examiner and also Jim Cooper, another partner in my law firm, to put a hold on it. In fact, I think they—the deed had never been delivered. And so I think it was destroyed at that time."

{¶ 42} Based upon the above, we find that no actual improper or undue influence was exerted upon Penick by Gordon or Gard relative to the destruction of the deed.

{¶ 43} Appellants have not demonstrated that the Licking Community Foundation had any opportunity to influence Penick in the preparation of the will or that Park National Bank, as Executor or Trustee, actually did improperly influence Penick. We agree with the trial court that there is insufficient evidence to support a claim of undue influence. Mere allegations, no matter how forcefully stated, are not a substitute for competent evidence.

{¶ 44} The first assignment of error is overruled.

## II, III

{¶ 45} Appellants' second and third assignment of errors raise common and interrelated issues; therefore, we will address the arguments together.

{¶ 46} Appellants argue that Penick lacked the mental capacity to execute the estate documents at issue. The burden of proof in determining testamentary capacity is on the party contesting the will. *Kennedy v. Walcutt* (1928), 118 Ohio St. 442, 161 N.E. 336, paragraph six of the syllabus. R.C. 2107.74 creates a presumption of the validity of a will, and included in this presumption is that the testator was of sound mind and possessed testamentary capacity to execute the will. *Doyle v. Schott* (1989), 65 Ohio App.3d 92, 94, 582 N.E.2d 1057.

{¶ 47} " 'Testamentary capacity exists when the testator has sufficient mind and memory: First, to understand the nature of the business in which he is engaged; Second, to comprehend generally the nature and extent of his property; Third, to hold in his mind the names and identity of those who have natural claims upon his bounty; Fourth, to be able to appreciate his relation to the members of his family.' " *Birman v. Sproat* (1988), 47 Ohio App.3d 65, 67–68, 546 N.E.2d 1354, quoting *Niemes v. Niemes* (1917), 97 Ohio St. 145, 119 N.E. 503, paragraph four of the syllabus.

{¶ 48} It is not enough to show that the testator had deteriorating health, even if appellant suffered from poor medical health at the time the documents were executed. Appellants must also show that the health decline actually affected the testator's capacity to execute the will. *Martin v. Dew*, 10th Dist. No. 03AP–734, 2004-Ohio-2520, 2004 WL 1109562, ¶ 19. ("[E]vidence that [the] decedent suffered from dementia or Alzheimer's disease on [the] day she executed [her] will, 'standing alone, is insufficient to raise a fact issue as to a lack of testamentary capacity without some evidence that the disease rendered her incapable of knowing her family or her estate or understanding the effect of her actions.' ") *Martin* at ¶ 19, quoting *In re Estate of Hall* (July 5, 2001), Tex.App. No. 05–98–01929–CV, 2001 WL 753795, * 4.

{¶ 49} Appellants cite Penick's age of 96 at the time of the modifications to his estate plan and his poor hearing and eyesight. Appellants assert that Penick suffered from "insane delusions," in that he believed appellant Suzanne Neumeyer was taking advantage of him, manifested in his arguments with her.[1] However, appellants have not demonstrated that Penick's deteriorating health actually affected his capacity to execute the estate documents. Therefore, appellants have not met the burden of proof necessary to rebut summary judgment in favor of appellees.

{¶ 50} The second and third assignments of error are overruled.

{¶ 51} The judgment of the Licking County Court of Common Pleas is affirmed.

Judgment affirmed.

FARMER and DELANEY, JJ., concur.

---

1. The arguments, whether unfounded or unjustified, provide Penick with motivation to change his estate plan, which in and of itself, is evidence of the exercise of will and competency, not of undue influence or testamentary incapacity.