ESTATE OF SNELL, Appellant,

v.

KILBURN, Exr., et al. Appellees.

[Cite as *Estate of Snell v. Kilburn*, 165 Ohio App.3d 352, 2005-Ohio-7076.]

Court of Appeals of Ohio,
Seventh District, Monroe County.

Nos. 04 MO 16 and 04 MO 17.

Decided Dec. 23, 2005.

Clyde C. Kahrl, for appellant.

James W. Peters, for appellees.

DeGenaro, Judge.

{¶ 1} These timely, consolidated appeals come for consideration upon the records in the trial court, the parties' briefs, and their oral arguments before this court. Plaintiff-appellant, Lanny Snell, appeals the decisions of the Monroe County Common Pleas Court, Probate Court Division, that granted summary judgment to defendant-appellee, Sharon Kilburn, as executor of the estate of Wayne Snell, on Lanny's will-contest action and dismissed his motion for a declaratory judgment to construe the will.

{¶ 2} Lanny argues that there were genuine issues of material fact as to whether Wayne Snell had testamentary capacity and whether the will was properly executed. However, the trial court properly granted summary judgment since Lanny provided no evidence supporting his allegations.

{¶ 3} Lanny also argues that the trial court erred by construing the will within the will-contest action. He contends that the will was properly construed in the declaratory-judgment action and that the issue should have been res judicata in the will-contest action. However, the trial court properly dismissed Lanny's will-contest action since both it and the declaratory-judgment action raised identical issues of construction and he has a similar interest in the outcome of both claims. Moreover, the trial court properly construed the will to determine that Wayne intended to disinherit Lanny. For all these reasons, the trial court's decision is affirmed.

## Facts

{¶ 4} In the 1950s and 1960s Wayne was married to Beulah Snell and the couple had one child, Lanny. When the Snells divorced in the mid–1960s, Beulah retained custody of Lanny and moved to Mount Vernon, Ohio. Lanny testified that he maintained a relationship with his father at all times over the years since the divorce. Wayne remained in Monroe County, Ohio, until his death on May 17, 2003.

{¶ 5} Wayne's will bequeathed the remainder of his property, both tangible and intangible, to Rosa Mehler, a woman whom Wayne had been dating since the 1970s. According to the will, if Mehler died before Wayne, then the remainder of Wayne's property, both tangible and intangible, was to go to Kilburn, Mehler's niece.

{¶ 6} Wayne's will was admitted to probate and Kilburn was named executor. On June 25, 2003, Lanny commenced a will-contest action in the Monroe County Probate Court, claiming the will was deficient in four ways: (1) undue influence, (2) lack of testamentary capacity, (3) improper execution, and (4) improper construction. Kilburn subsequently moved for summary judgment, which the trial court granted. Lanny timely appealed that decision.

{¶ 7} Several months after the trial court granted summary judgment in that action, Kilburn filed her final account of Wayne's estate. Snell commenced another action objecting to the final account and asking for declaratory judgment to construe the will. The trial court overruled these objections on the basis that the same issues had been raised or should have been raised during the summary-judgment proceedings. Lanny also timely appealed this decision. We have consolidated Lanny's two appeals.

## Standard of Review

{¶ 8} On appeal, Lanny raises five assignments of error, each of which challenges the trial court's decision to grant summary judgment on a particular issue. In ruling on a motion for summary judgment, the court must construe the record and all inferences therefrom in the opposing party's favor. *Doe v. First United Methodist Church* (1994), 68 Ohio St.3d 531, 535, 629 N.E.2d 402. The party seeking summary judgment has the initial burden of informing the court of the motion's basis and identifying those portions of the record tending to show that there are no genuine issues of material fact on the essential elements of the nonmoving party's claim. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264. The movant must be able to point to some evidence of the type listed in Civ.R. 56(C) that affirmatively demonstrates that the nonmoving party has no evidence to support his or her claim. Id. If this initial burden is met, the nonmoving party has a reciprocal burden to set forth specific facts showing that

there is a genuine issue for trial, and if the nonmovant does not respond, summary judgment, if appropriate, shall be granted. Id.

{¶ 9} An appellate court reviews a decision granting summary judgment de novo. *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241. Summary judgment is properly granted when (1) there is no genuine issue as to any material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made. *Harless v. Willis Day Warehousing Co.* (1976), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 375 N.E.2d 46.

## Will Contest

{¶ 10} In his first four assignments of error, Lanny challenges various aspects of the trial court's decision to grant summary judgment to Kilburn in the will-contest action. The purpose of a will contest is to contest the validity of a will admitted to probate. R.C. 2107.71. The admission of a will to probate is prima facie evidence of its execution, attestation, and validity. R.C. 2107.74. With regards to prima facie evidence, the Ohio Supreme Court has stated that "prima facie evidence is not conclusive." *Krischbaum v. Dillon* (1991), 58 Ohio St.3d 58, 64, 567 N.E.2d 1291. The admission of a will to probate thus creates a presumption as to the will's validity; however, this presumption is not irrebuttable. Id. In order to rebut the presumption of validity created when a will is admitted to probate, a contestant must "produce evidence which furnishes a reasonable basis for sustaining his claim." *Kata v. Second Natl. Bank* (1971), 26 Ohio St.2d 210, 55 O.O.2d 458, 271 N.E.2d 292, paragraph two of the syllabus.

## Testamentary Capacity

{¶ 11} In his first assignment of error, Lanny argues:

{¶ 12} "The trial court erred as a matter of law by dismissing the will contest on summary judgment upon the grounds that there was no evidence that decedent Wayne Snell lacked testamentary capacity."

{¶ 13} Lanny contends that Wayne could not have had testamentary capacity when signing his will since there is no indication that he considered including his son as a beneficiary under the will. Without the requisite testamentary capacity, Lanny argues that the will is invalid.

{¶ 14} "Testamentary capacity exists when the testator has sufficient mind and memory: First, to understand the nature of the business in which he is engaged; Second, to comprehend generally the nature and extent of his property; Third, to hold in his mind the names and identity of those who have natural

claims upon his bounty; [and] Fourth, to be able to appreciate his relation to the members of his family." *Birman v. Sproat* (1988), 47 Ohio App.3d 65, 67–68, 546 N.E.2d 1354, citing *Niemes v. Niemes* (1917), 97 Ohio St. 145, 119 N.E. 503. The burden of proof in determining testamentary capacity is on the party contesting the will. *Kennedy v. Walcutt* (1928), 118 Ohio St. 442, 161 N.E. 336, paragraph six of the syllabus.

{¶ 15} Lanny relies on *Springer v. Lee* (May 2, 1996), 3rd Dist. No. 5–95–42, 1996 WL 223699, for the proposition that a genuine issue of material fact is created when a testator does not mention the names of the heirs of his body when executing a will. In *Springer*, the appellant, the son of the decedent, filed a will-contest action against the executor of the estate. The executor subsequently filed a motion for summary judgment. The appellant asserted that the decedent lacked the testamentary capacity to execute the will. This assertion was based on evidence that the decedent's memory was failing at the time he executed his will.

{¶ 16} Evidence of the decedent's memory failure came from two places. First, the appellee testified as to conversations he had had with the decedent about funeral arrangements. While the appellee stated that he believed the decedent to be of sound mind, his other testimony suggested otherwise. The appellee testified that during the funeral arrangement conversations, the decedent indicated to him only that he had a sister. No mention was made of the decedent's son or of numerous other siblings. Furthermore, the decedent also failed to inform the appellee that he had a number of grandchildren and great-grandchildren. The second piece of evidence presented was the decedent's form for funeral arrangements. In filling out. this form, the decedent gave incorrect information about his date of birth, place of birth, and mother's name. After reviewing this evidence, the executor's motion for summary judgment was granted.

{¶ 17} On appeal, the appellant argued that the trial court improperly granted summary judgment on the issue of testamentary capacity. The court of appeals concluded that the decedent's failure to mention his son created an issue of fact under the *Niemes* test.

{¶ 18} This case is distinguishable from *Springer* because Kilburn introduced evidence showing that Wayne did, in fact, have testamentary capacity at the time he executed his will. Kilburn introduced the affidavits of three witnesses, Janet Valkovic, Ruth Valkovic, and Wayne's attorney, James W. Peters, each of whom averred that they believed Wayne to be of sound mind at the time he executed the will. Lanny offered no evidence contradicting the affidavits of these witnesses.

{¶ 19} Because Kilburn introduced evidence demonstrating Wayne's testamentary capacity, this case is similar to *Martin v. Dew,* 10th Dist. No. 03AP–734, 2004-Ohio-2520, 2004 WL 1109562. In *Martin,* the decedent's cousin filed a will-contest action after the decedent's will was admitted into probate. The appellant claimed an interest in the will as a cousin of the decedent (i.e., a lineal descendent of decedent's paternal grandparents). In the complaint, the plaintiff alleged that the decedent lacked testamentary capacity. The defendant moved for summary judgment, providing affidavits and deposition testimony reflecting that the witnesses believed the decedent to be fully aware of the nature and consequences of her actions on the day the will was executed. The trial court granted the defendants' motion for summary judgment.

{¶ 20} On appeal, the court held that "the evidence presented was insufficient to create a genuine issue of material fact as to whether [the] decedent lacked testamentary capacity" when she executed her will. Id. at ¶ 20. The court noted that "the only evidence in the record addressing the issue of [the] decedent's testamentary capacity at the time she executed her will was contained in the affidavits and deposition testimony of Gayton and his wife, and the affidavit of Dew." Id. Because the "appellant offered no evidence that [the] decedent was affected by dementia on the date she executed [her] will," the court determined that reasonable minds could come to only one conclusion. Id. at ¶ 20, 25. This reasoning was based on the fact that the "uncontradicted statements by the individuals who witnessed [the decedent] sign the will indicated [that] she * * * [had] testamentary capacity." Id. at ¶ 20.

{¶ 21} Given the evidence in this case, the trial court correctly concluded that Kilburn was entitled to summary judgment on this issue. In contrast to the testimony in *Springer,* the evidence in this case shows that Wayne was of sound mind when he executed his will. Lanny provided no evidence to the contrary, even within his own affidavit.

{¶ 22} Furthermore, Wayne's failure to mention his son's name is very different from the decedent's failure to do likewise in *Springer.* The decedent in *Springer* forgot to mention his son, grandchildren, and great-grandchildren while discussing funeral arrangements. Wayne did not mention his son while drafting and executing his will. This difference is important because the *Springer* decedent's failure was forgetful while Wayne's failure was intentional. Wayne executed four wills over a period of almost 22 years without ever mentioning his son.

{¶ 23} In this case, the evidence in the record demonstrates that there is not a genuine issue of material fact regarding Wayne's testamentary capacity at the time he executed his will. The trial court properly granted summary judgment on this issue. Wayne's first assignment of error is meritless.

Proper Execution of the Will

{¶ 24} In his second assignment of error, Lanny argues:

{¶ 25} "The trial court erred as a matter of law, by dismissing the will contest upon the grounds that Wayne Snell's will was properly executed according to law."

{¶ 26} Lanny contends that the will was not properly attested to as required by R.C. 2107.03. That section provides:

{¶ 27} "Except oral wills, every last will and testament shall be in writing, but may be handwritten or typewritten. Such will shall be signed at the end by the party making it, or by some other person in such party's presence at his express direction, and be attested and subscribed in the presence of such party, by two or more competent witnesses, who saw the testator subscribe, or heard him acknowledge his signature."

{¶ 28} R.C. 2107.03 requires four things to create a valid will: (1) a written document, (2) signed at the end by the testator or the testator's agent, (3) in the presence of two witnesses, (4) who must observe the testator's signature or hear him acknowledge his signature. It is important to remember that in order to overcome the presumed validity of a will admitted to probate, the contestant in a will contest action must "produce evidence which furnishes a reasonable basis for sustaining his claim." *Kata*, 26 Ohio St.2d 210, 55 O.O.2d 458, 271 N.E.2d 292, paragraph two of the syllabus.

{¶ 29} In many ways, this case is similar to *In re Will of McGraw* (1967), 14 Ohio App.2d 87, 43 O.O.2d 207, 236 N.E.2d 684. In *McGraw*, a will was drafted by an attorney in a hospital room, during the last illness of the testator. The will bore an attestation clause, the testator's signature, and the signatures of two witnesses, one of which was the attorney's. Both witnesses testified that they were present when the testator signed the will. The will was denied admittance to probate since the attorney had improperly witnessed the will.

{¶ 30} The proponent of the will appealed, alleging that the trial court erred when it failed to admit the will to probate. The appellate court found that the will met the statutory requirements and should have been admitted to probate for three reasons. It first noted that the fact that the will was drawn by the attorney who was present at its execution was strong presumptive evidence that the execution of the will was regular. Id. at 89, 43 O.O.2d 207, 236 N.E.2d 684. It held that this presumption of due execution could be overcome only by other evidence, but not by a mere absence of evidence. Id. Finally, it relied on the fact that the attestation clause which recited compliance with all statutory requirements for the valid execution of the will. Id.

{¶ 31} Here, Wayne's will was similarly executed. It was drafted by the attorney who was present at its execution; the will was regular on its face and, therefore, was entitled to a presumption of proper execution; and the attestation clause was signed by two witnesses and recited compliance with the statutory requirements. Finally, the witnesses all signed affidavits stating that the will was properly executed. Lanny offered no evidence contradicting this evidence.

{¶ 32} Nevertheless, Lanny contends that the witnesses did not properly attest to the will since the attestation clause in the decedent's will does not comply with the technical requirements of R.C. 2107.03. Specifically Lanny argues that the clause in question is on a separate sheet of paper, the sheet is not numbered or dated, and the sheet has no reference to this particular will.

{¶ 33} No Ohio case has directly addressed this issue, but we find an Oklahoma case on this issue to be persuasive. In *In re Dunlap's Will* (1922), 87 Okla. 95, 209 P. 651, the mother of a deceased man challenged the admission of a will to probate. One of the issues raised was whether the will was properly attested to. The evidence showed that the will, including the signature of the testator, was entirely written on one sheet of paper, and the attestation clause and the signatures of the witnesses were on another sheet. There was not sufficient space on the first sheet of paper to include the attestation clause. The two sheets had been previously held together by a clipless fastener and were stapled at the time of trial. The will was admitted to probate over the widow's challenge, and appeal was taken all the way to the Oklahoma Supreme Court.

{¶ 34} The court held the separation of the will and the attestation clause to be immaterial. *Dunlap* at 652. The court's reasoning was based primarily on the fact that the statute did not forbid the use of separate sheets of paper or direct how they should be fastened together, nor did it require that the signature of the subscribing witnesses be upon the same sheet as the signature of the testator. Id. at 652. It was enough that the court could tell that the two sheets belonged together.

{¶ 35} Here, R.C. 2107.03 requires only that a will be attested to by two witnesses who saw the testator sign his name or heard him acknowledge his signature. There is no requirement that there be an actual attestation clause, that the signatures of the witnesses be on the same sheet as signature of the testator, that the pages be numbered, or that the attestation clause be dated. While these things would certainly entitle the will to a greater presumption of validity, the lack of them does not negate the presumption.

{¶ 36} Because Lanny has not met his burden of providing evidence to sustain his claim, and because Wayne's will complies with the statute, the trial court properly granted summary judgment to Kilburn on this issue. Lanny's second assignment of error is meritless.

Construing a Will in a Will–Contest Action

{¶ 37} In his third assignment of error, Lanny argues:

{¶ 38} "That the trial court erred as a matter of law, by dismissing the will contest to construe the will so that decedent Wayne Snell's son Lanny would receive the remainder of the estate."

{¶ 39} Lanny's arguments within this assignment of error are confused, but it appears that he is trying to argue that the trial court erred by ruling on issues of will construction during a will-contest action. Lanny alleges that this ruling was outside the scope of the will contest, which should have been limited to issues of validity.

{¶ 40} The probate court clearly has the authority to construe the will. Probate courts are courts of limited jurisdiction and have only those powers granted to it by statute. *Roll v. Edwards*, 156 Ohio App.3d 227, 2004-Ohio-767, 805 N.E.2d 162, at ¶ 16. In enacting R.C. 2101.24, the General Assembly has specifically set forth those matters that are properly placed before the probate court, one of which is the exclusive jurisdiction to construe and determine the validity of wills. Id. at ¶ 17; R.C. 2101.24(A)(1)(k) and (p).

{¶ 41} Whenever a probate court has a case before it, it also "has plenary power at law and in equity to dispose fully of any matter that is properly before the court, unless the power is expressly otherwise limited or denied by a section of the Revised Code." R.C. 2101.24(C). "The legislative grant of plenary power to the probate court is the nature of the power and authority of the probate court to take that action which is necessary to fully dispose of any matter properly before it." *Roll*, 156 Ohio App.3d at 233–234, 805 N.E.2d 162, citing *Madigan v. Dollar Bldg. & Loan Co.* (1935), 52 Ohio App. 553, 563, 6 O.O. 478, 4 N.E.2d 68. "It authorizes the probate court to grant any relief required to fully adjudicate the subject matter within the probate court's exclusive jurisdiction." Id., citing *State ex rel. Lewis v. Moser* (1995), 72 Ohio St.3d 25, 29, 647 N.E.2d 155.

{¶ 42} Nothing in these statutes prevents a probate court from construing a will, one of the duties placed by law on the probate court, while it is also determining the validity of a will, another of the duties specifically assigned to the probate court. Furthermore, both the Civil Rules and case law indicate the opposite. Civ.R. 18(A) requires "a party asserting a claim to relief as an original claim, counterclaim, cross-claim, or third-party claim, may join, either as independent or as alternate claims, as many claims, legal or equitable, as he has against an opposing party." Thus, in cases such as *Waldecker v. Erie Cty. Humane Soc.* (Feb. 27, 2004), 6th Dist. No. E–03–022, 2004 WL 368098, courts have held that the failure to raise issues of will construction in an action determining the validity of a will acts as res judicata on a later action to construe the will. Id. at ¶ 18.

{¶ 43} Lanny is incorrect when he argues that a probate court cannot construe a will in a will-contest action. Thus, his third assignment of error is meritless.

## Res Judicata

{¶ 44} In his fifth assignment of error, Lanny argues:

{¶ 45} "The court below erred as a matter of law by ruling that its prior order denying the request to construct the will in the will contest was binding upon its decision in the will construction action."

{¶ 46} Lanny contends that the probate court's decisions in the will contest should not have had a preclusive effect on his objections to the account and his motion for a declaratory judgment to construe the will. The doctrine of res judicata involves both claim preclusion and issue preclusion and prevents the litigation of matters already decided by a court. *Holzemer v. Urbanski* (1999), 86 Ohio St.3d 129, 133, 712 N.E.2d 713. Thus, "[a] final judgment or decree rendered upon the merits, without fraud or collusion, by a court of competent jurisdiction * * * is a complete bar to any subsequent action on the same claim or cause of action between the parties or those in privity with them." *Norwood v. McDonald* (1943), 142 Ohio St. 299, 27 O.O. 240, 52 N.E.2d 67, paragraph one of the syllabus.

{¶ 47} In resolving Lanny's fourth assignment of error, we conclude that the trial court could properly construe the will during the will-contest action. Lanny filed a second claim asking for an accounting of Wayne's estate and declaratory judgment to construe the will. The trial court dismissed this claim, holding it to be barred by the doctrine of res judicata. The trial court's decision was correct.

{¶ 48} In both the will-contest and declaratory-judgment actions, Lanny asked that the will be construed to award him the remainder of Wayne's estate. In the will contest, the court decided that Lanny was implicitly disinherited because there was no remainder of his father's estate. Because the parties and the claims are the same in both actions, the probate court properly concluded that res judicata applied to this claim. Lanny's fifth assignment of error is meritless.

## Disinheritance of an Heir

{¶ 49}· In Lanny's fourth assignment of error, he argues:

{¶ 50} "The trial court erred as a matter of law by failing to award Lanny Snell the remainder of his father's estate when his father failed to expressly disinherit him."

{¶ 51} Lanny contends that Ohio courts should not allow a parent to disinherit a child without some kind of overwhelming evidence that the parent actually intended to do so. He contends that in order to have this type of

overwhelming evidence, a parent must expressly state in the will that the parent intends to disinherit a child. According to Lanny, without this kind of express intent explicitly stated, courts should presume that a child inherits from a parent. Lanny's argument is not the law of Ohio.

{¶ 52} It is a primary rule applicable to the construction of wills that the heir at law shall not be disinherited by conjecture, but only by express words or necessary implication. *Crane v. Doty's Exrs.* (1853), 1 Ohio St. 279, 283, 1853 WL 28. "That implication has been defined to be such a strong probability that an intention to the contrary cannot be supposed." Id. at 283. A testator cannot, by any words of exclusion used in his will, disinherit one of his lawful heirs, in respect to property not disposed of by that will. Id. at 283. "To allow a testator to leave his property undisposed of, and by will to control the course of descent and distribution, would be to allow him to repeal the law of the land." Id. at 283. However, it is important to note that Ohio law allows a testator to disinherit a child without specifically stating that he intends to disinherit that child. "[I]f [a] testator makes no mention of one of his children in his will and by such will disposes of all of his property, such child is as completely disinherited as if the testator had specifically so provided." *Birman v. Sproat* (1988), 47 Ohio App.3d 65, 69, 546 N.E.2d 1354.

{¶ 53} In *Birman,* the illegitimate daughter of a deceased man contested the execution and construction of his will. By will, the decedent made several small bequests and left the residue of his estate to his wife. The proponents of the will made a motion for summary judgment, and the motion was granted.

{¶ 54} On appeal, the appellant argued that there is a presumption against disinheritance universally recognized by Ohio courts. The appellate court did not disagree with this argument. It did, however, hold that children, legitimate or not, can be completely disinherited by implication if a testator completely disposes of all his property by will. Id. at 69, 546 N.E.2d 1354. That disposition of property overcomes the presumption against disinheritance. Id.

{¶ 55} The facts in this case resemble those in *Birman.* Here, Wayne completely disposed of all his real and personal property. In the first clause of his will, Wayne stated: "I direct that all my just debts and funeral expenses be paid out of my estate as soon as practicable after the time of my decease." In the fourth clause of his will, Wayne stated, "In the event that Rosa A. Mehler, should predecease me, I give all the remainder of my property, tangible and intangible, of every kind, nature and description and wheresoever situated, which I may have or own, to Sharon Kilburn." Because Mehler predeceased Wayne, the remainder of all his property was to go to Kilburn after Wayne's debts were paid.

{¶ 56} In this case, Wayne clearly intended to disinherit Lanny. Wayne's will completely disposes of his property and makes no mention of his son. This disposition of his property overcomes the presumption against disinheritance. Accordingly, Lanny's fourth assignment of error is also meritless.

## Conclusion

{¶ 57} In these cases, Lanny has challenged the validity of the will, how it is construed, and whether his father validly disinherited him. However, the trial court properly granted summary judgment against Lanny on each of these issues. Lanny provided no evidence that his father lacked testamentary capacity when he executed his will. Moreover, the will is valid on its face since it has the testator's signature and was attested to by two witnesses. Additionally, the trial court had the authority to construe the will during the will-contest action and that construction had preclusive effect on Lanny's declaratory-judgment action. Finally, the words in Wayne's will show that he intended to disinherit Lanny and overcome the presumption against disinheritance. For all these reasons, the judgment of the probate court is affirmed.

Judgment affirmed.

VUKOVICH and WAITE, JJ., concur.