OPINION
{¶ 1} These two combined appeals involve challenges to summary judgment granted to the defendants in a will contest and in a civil tort complaint for intentional interference with the expectancy of inheritance, both of which were decided in the Columbiana County Court of Common Pleas. The will contest was resolved on April 12, 2005, in favor of Appellees. The trial court determined that the will executed on April 28, 2000, was the valid and proper will. The record on appeal indicates that Appellants presented no material evidence in the will contest that could establish that the testator, Philip A. Goehring, was unduly influenced or that he was of unsound mind when he executed the April of 2000 will. The civil tort complaint reached summary judgment on June 28, 2005, and was also decided in favor of Appellees. Since Appellants base their claim of intentional interference with the expectancy of inheritance on the fact that the April, 2000, will was invalid, the decision in the will contest resolved the tort claim as well. While the matter presents a unique and, in some aspects, troubling record, Appellants' arguments on appeal are not persuasive, and the judgments of the trial court are hereby affirmed.
 HISTORY OF THE CASE {¶ 2} The decedent, Philip A. Goehring, was born in 1919. He lived in Columbiana, Ohio. He inherited a substantial fortune from his parents, but did not pay close attention to his financial affairs and "lived like a pauper". (12/7/04 Loshinsky Depo., p. 26.) He often neglected to cash dividend checks. He also failed to pay taxes, which at times resulted in substantial IRS liens. *Page 2 
 {¶ 3} By the early 1990's, it appears that Philip did not have any immediate family, and had a somewhat stormy relationship with his more distant relatives. He changed the terms of his will rather frequently. He executed a will in July of 1992 that excluded any gifts to his relatives, and which actually stated that he was not close to them. A new will, executed in 1994, left his entire estate to five non-relatives.
 {¶ 4} In 1995, Philip met Carole Blocksom, who was married to Thomas Blocksom at the time. The record indicates that Carole became acquainted with Philip when she attempted to purchase some stone that was on his property.
 {¶ 5} In April, 1996, there was a fire at Philip's home. He soon moved into a trailer near the burned-out house. Carole began spending more time with Philip and took over many day-to-day household tasks during this period. Thomas Blocksom also started to do chores on Philip's farm at about this time.
 {¶ 6} On January 30, 1997, Dr. Larry K. Truzzie, a psychologist, prepared a written competency evaluation of Philip. Philip submitted to the exam because he was, "in the process of determining the disposition of his estate and wants to reduce the possibility that his plans [would] be contested." (1/30/97 Competency Exam, p. 1.) Dr. Truzzie found that Philip was 78 years old, had never married, had no children, but did have nephews and cousins, "for whom he feels little or no attachment." (1/30/97 Competency Exam, p. 1.) He found that Philip had no plans to include those relatives in his will because they, "gave me a hard time when I was up against it." (1/30/97 Competency Exam, p. 1.) *Page 3 
 {¶ 7} Dr. Truzzie found that Philip was able to communicate logically and coherently, was cooperative, and could concentrate and pay attention. He found some impairment of short-term memory, but concluded that recent memory and long-term memory were fine. He found no presence of delusions, hallucinations, phobias, or other perceptual dysfunctions. Philip was aware of his surroundings, monitored the care of his farm and the restoration of his home, and actively engaged in the planning of his testamentary estate. He did have some physical problems with his knees and with incontinence. He found that Philip could maintain his daily selfcare, but needed transportation for shopping, medical and legal purposes. Ultimately, Dr. Truzzie determined that Philip was of sound mind and was competent to determine the disposition of his estate.
 {¶ 8} In February 1997, Carole and Thomas Blocksom dissolved their marriage, and in April, Philip and Carole married. Carole moved in with Philip on his farm.
 {¶ 9} On August 1, 1997, Philip executed another will, which left the bulk of his estate to Carole. The will contained the following clause:
 {¶ 10} "KNOW ALL MEN BY THESE PRESENTS THAT, I PHILIP A. GOEHRING, asked Thomas Blocksom to step aside so Carole Blocksom could marry me and become my companion for the remainder of my life. It is my hope that they remarry."
 {¶ 11} Also in August, deeds were recorded making Philip and Carole joint and survivorship owners of his real property interests. *Page 4 
 {¶ 12} In January of 1998, Philip executed a will substantially similar to the April, 1997 will, except for the change of one name on a $10,000 bequest.
 {¶ 13} On February 11, 1999, the trial judge signed an "Order on Change of Name," for Philip. His legal name had been Lewis Meek Goehring, and it was changed to Philip Adam Goehring.
 {¶ 14} In March or April of 2000, Carole was diagnosed with pancreatic cancer. Her condition was considered to be very serious.
 {¶ 15} On April 28, 2000, Philip executed yet another will, very similar to the 1997 and 1998 wills, except that Thomas Blocksom became the secondary beneficiary of the bulk of Philip's estate if Carole did not survive him, replacing Douglas and Martin Dowd, who are Carole Goehring's children by a prior marriage. This will was prepared by Attorney Edward Asper.
 {¶ 16} During the period of April, 2000 to April of 2001, various deeds were executed transferring the Goehrings' real property to Thomas Blocksom. In August, 2001, the bulk of the remaining assets of Philip and Carole Goehring were transferred to a trust, with Thomas Blocksom as the trustee. The main asset of the trust was a Parker/Hunter brokerage account worth over $3 million. Philip also executed a power of attorney naming Thomas Blocksom as his attorney in fact.
 {¶ 17} Carole Goehring died on August 24, 2001. Philip's physical and mental health deteriorated significantly after Carole's death. Various reports prepared in 2002 and afterward note that Philip was suffering from senile dementia. *Page 5 
 {¶ 18} On April 7, 2003, while Philip still lived, Dan Adams and James Martin filed a complaint for intentional interference with an expectancy of inheritance. Dan Adams is a cousin of Philip Goehring. He based his expectancy on the statute of descent and distribution, at one point arguing that Philip Goehring died intestate. James Martin was a friend of Philip Goehring, and expected to inherit based on indications in prior wills. The civil case was designated as Columbiana County Common Pleas Case No. 2003 CV 315.
 {¶ 19} During the course of litigation of the civil tort case, many other plaintiffs joined the action, including: Virginia Dierker and Elizabeth Wheeler (sisters of Dan Adams, and cousins of the decedent on his mother's side of the family); John Adams, James Loshinsky, Claire Fraser, Ronald Ellyson, Connie Krizon, Richard Ellyson (all friends of the decedent who were named in one or more prior wills).
 {¶ 20} We note that James Martin was dismissed as a plaintiff on September 8, 2004. Dan Adams, Elizabeth Wheeler, and Virginia Dierker were dismissed on November 8, 2004. The plaintiffs that remain in the civil action are not relatives of Philip Goehring, but are all friends who were listed as beneficiaries in one or more of the wills starting with the 1994 will.
 {¶ 21} Philip Goehring died on March 3, 2004. The April of 2000 will was admitted to probate on March 22, 2004 in Columbiana County Common Pleas Case No. 2004 ES 79. Thomas Blocksom was named as executor. The estate listed only $7,200 in assets. *Page 6 
 {¶ 22} On April 2, 2004, Appellees filed a motion for summary judgment in the tort case.
 {¶ 23} On May 28, 2004, Dan Adams, Virginia Dierker, Elizabeth Wheeler, and Frank Adams (all cousins of Philip Goehring on his mother's side of the family) filed a will contest challenging the validity of Philip's April, 2000, will on grounds of lack of testamentary capacity or undue influence. This will contest was filed as part of the probate proceedings in Columbiana County Common Pleas Case No. 2004 ES 79.
 {¶ 24} On December 9, 2004, a motion was filed to join new plaintiffs to the will contest action. The new parties were Claire Fraser, Charles Ellyson, Richard Ellyson, Connie Krizon and James Loshinsky. The new plaintiffs were all friends of Philip Goehring, not relatives, and were all listed as beneficiaries in the April, 1994, will.
 {¶ 25} On December 22, 2004, Appellees filed a motion for summary judgment in the will contest action.
 {¶ 26} On April 12, 2005, the probate court ruled on the will contest action. Although the court recognized that there were many unanswered questions about the motives of Philip, Carole and Thomas in dissolving one marriage and immediately entering into another, the court did not consider the personal morality issues to be determinative in the will contest. The court found that there was no evidence in the record showing that Philip lacked testamentary capacity or was unduly influenced on April 28, 2000, which is the date the will was executed. The April 28, 2000, will is the will that was admitted to probate, and the court noted that the very admission of the *Page 7 
will to probate is prima facie evidence of its validity pursuant to R.C. § 2107.74. The court considered Attorney Edward Asper's affidavit, which explained in detail the nature of Philip's competence to execute the April 2000 will. Attorney Asper prepared this will and also signed it as a witness. The court also found that the reference to dementia in Philip's death certificate was irrelevant with respect to his competence almost four years earlier. The court sustained Appellees' motion for summary judgment and dismissed the will contest. Appellants filed a timely appeal on May 9, 2005, and this appeal is designated as Appeal No. 2005-CO-27.
 {¶ 27} On June 28, 2005, the court ruled in favor of Appellees in the intentional interference with the expectancy of inheritance case. The court pointed to the resolution of the will contest action as being determinative in the tort action. The court noted that no evidence was presented that Thomas Blocksom ever knew that any of the plaintiffs were former beneficiaries under any of Philip Goehring's wills. The court dismissed Thomas Blocksom from the case, and granted summary judgment to the remaining Appellees. A timely appeal was filed on July 6, 2005, and was designated as Appeal No. 2005-CO-35. The two appeals have been consolidated for consideration on appeal.
 WILL CONTEST ACTION {¶ 28} Appellants' first two assignments of error deal with the will contest, and will be treated together: *Page 8 
 {¶ 29} "THE TRIAL COURT ERRED, AS A MATTER OF LAW, BY FAILING TO RECOGNIZE THE SHIFTING BURDEN OF PROOF WITH RESPECT TO THE CLAIM OF UNDUE INFLUENCE ON THE MAKING OF THE APRIL 28, 2000 WILL."
 {¶ 30} "THE TRIAL COURT ERRED, AS A MATTER OF LAW, IN SUSTAINING DEFENDANT-APPELLEE'S SUMMARY JUDGMENT MOTION AS GENUINE ISSUES OF MATERIAL FACT EXIST AS TO WHETHER DECEDENT WAS COMPETENT TO EXECUTE THE WILL OF APRIL 29, 2000."
 {¶ 31} The Ohio Rules of Civil Procedure govern all aspects of a will contest action unless otherwise provided by law. See R.C. § 2107.72(A). There is nothing in the Ohio Revised Code supplanting Civ.R. 56 in these proceedings, therefore, summary judgment is an appropriate method by which to resolve a will contest. If summary judgment is granted in a will contest, the appellate court will review the judgment under a de novo standard. See Nelson v. Daniels (Sept. 5, 1995), Lawrence App. No. 94 CA 29; Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105,671 N.E.2d 241. Before summary judgment can be granted, the trial court must determine that (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most favorably in favor of the party against whom the motion for summary judgment is made, the conclusion is adverse to that party. Temple v. Wean United,Inc. (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 364 N.E.2d 267. *Page 9 
 {¶ 32} "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifyingthose portions of the record which demonstrate the absence of a genuineissue of fact on a material element of the nonmoving party'sclaim." (Emphasis in original.) Dresher v. Burt (1996),75 Ohio St.3d 280, 296, 662 N.E.2d 264. If the moving party meets its initial burden, the nonmoving party bears a reciprocal burden to produce evidence on any issue for which that party bears the burden of proof at trial. Id. at 293, 662 N.E.2d 264.
 {¶ 33} In this case, the record reveals that the April 28, 2000 will was admitted to probate on March 22, 2004. Once a will is admitted to probate, this acts as prima facie evidence of the validity of the will pursuant to R.C. § 2107.74: "On the trial of any will contest under section 2107.71 of the Revised Code, the order of probate is prima-facie evidence of the attestation, execution, and validity of the will or codicil." The presumption created by R.C. § 2107.74 is a rebuttable presumption, not an absolute one. Krischbaum v. Dillon (1991),58 Ohio St.3d 58, 64, 567 N.E.2d 1291. Although Appellees did provide other evidence showing Philip Goehring's proper mental capacity and the lack of undue influence, it would have been entirely appropriate for the trial court to rely on the statutory prima facie validity of the will, which shifted the burden of proof to Appellants to establish with some evidence a lack of testamentary capacity or undue influence.
 {¶ 34} Although it is difficult to ascertain Appellants' argument within the brief submitted on appeal, their first assignment of error seems to be that Thomas Blocksom had a confidential relationship with Philip Goehring, and that this *Page 10 
confidential relationship shifted the burden of going forward with evidence to Appellees. Appellants contend that the confidential relationship created a presumption that Thomas Blocksom unduly influenced Philip Goehring in the preparation and execution of the April, 2000 will.
 {¶ 35} The Krischbaum case, cited above, explains what elements the plaintiff in a will contest must prove before there can be a presumption of undue influence:
 {¶ 36} "The presumption of undue influence arises upon proof that (i) the relationship between an attorney and testator is that of attorney and client, (ii) the attorney is a beneficiary in the will, (iii) the attorney is not related by blood or by marriage to the testator, and (iv) the attorney actively participated in the preparation of the will. Once the contestants establish these facts, a rebuttable presumption of undue influence arises, thereby shifting onto the attorney the burden of persuasion, by a preponderance of the evidence, that he has not brought undue influence to bear upon the testator. * * *
 {¶ 37} "The presumption of undue influence arises once the contestants prove the predicates for the presumption, and the burden to rebut the presumption then shifts to the attorney; however, the burden of proof shifts only in regard to the particular bequest to the attorney, and this burden does not affect the validity of other portions of the will. Thus, the statutory presumption in favor of the validity of the will remains in effect; it is only the particular bequest to the attorney that is the subject of a rebuttable presumption of undue influence. The two presumptions arise from different facts and concern different subjects." Id. at 64-65. *Page 11 
 {¶ 38} The presumption of undue influence, thus, only affects specific bequests and only arises after the plaintiffs establish that the beneficiary had an attorney-client relationship with the testator. InKrischbaum, it was only the attorney-client relationship that was given special attention, and not every other type of confidential relationship. The holding in Krischbaum is very specific and limited, and it is obvious from the record that Thomas Blocksom did not have any attorney-client relationship with the decedent when the April, 2000 will was signed.
 {¶ 39} Even assuming arguendo that the Krischbaum case covers more than attorney-client relationships, Appellants failed to show that there was any type of similarly confidential relationship between Thomas Blocksom and Philip Goehring. Thomas Blocksom's relationship to Goehring at the time the will was executed was as a worker on Goehring's farm. Appellants themselves refer to Thomas Blocksom as Goehring's "handyman." (Appellants' brief, p. 7.) After Philip married Carole Blocksom on April 1, 1997, Thomas Blocksom was also associated with Mr. Goehring as the ex-husband of Goehring's wife. Being a farm-worker, a handyman, or the ex-husband of the testator's spouse, creates no inference of confidentiality, and in fact, logically would indicate more of an absence of a confidential relationship.
 {¶ 40} Furthermore, there is no evidence that Thomas Blocksom actively participated in the preparation of the April of 2000 will; the fourth element of the Krischbaum test. Thomas Blocksom averred that he did not participate in preparing the will and denied that he even knew the contents of the will until after Carole Goehring died in late 2001. Appellants failed to provide any rebuttal evidence that *Page 12 
Thomas Blocksom ever had an opportunity to exert any influence on Philip, much less helped prepare the will.
 {¶ 41} Appellants cite to Krischbaum in their reply brief, but they do not appear to accept its limited holding. As an alternative argument, though, they try to shift the focus from away Thomas Blocksom by alleging that Attorney Edward Asper unduly influenced Philip because Asper was paid a fee for probating Carole Goehring's will. Appellants present no authority for their conclusion that a presumption of undue influence can arise simply because an attorney collects a fee as part of another person's probate estate. We are not aware of any authority supporting such an argument.
 {¶ 42} Appellants also appear to argue that they provided enough evidence to satisfy the elements of undue influence, even if they cannot rely on a presumption of undue influence. A finding of undue influence requires: (1) a susceptible testator, (2) another's opportunity to exert undue influence on the testator, (3) improper influence exerted or attempted, and (4) a result showing the effect of such influence.Redman v. Watch Tower Bible Tract Soc. of Pennsylvania (1994),69 Ohio St.3d 98, 101, 630 N.E.2d 676.
 {¶ 43} "General influence, however strong or controlling, is not undue influence unless brought to bear directly upon the act of making the will." West v. Henry (1962), 173 Ohio St. 498, 501, 184 N.E.2d 200. Further, "[t]he mere existence of undue influence, or an opportunity to exercise it, although coupled with an interest or motive to do so, is not sufficient, but such influence must be actually exerted on *Page 13 
the mind of the testator with respect to the execution of the will in question." Id. "The undue influence must so overpower and subjugate the mind of the testator as to destroy his free agency and make him express another's will rather than his own." Rich v. Quinn (1983),13 Ohio App.3d 102, 103, 468 N.E.2d 365.
 {¶ 44} Importantly, the undue influence must be shown to have been in effect at the time the will was executed. West v. Henry (1962),173 Ohio St. 498, 501, 184 N.E.2d 200. Appellants' evidence of a supposed confidential relationship between Thomas Blocksom and Philip Goehring refers to events occurring long after the April, 2000 will was executed, and thus, have no particular bearing on whether there was actual influence exerted in the creation of that will.
 {¶ 45} There is no evidence in the record showing that Philip Goehring was susceptible to undue influence on April 28, 2000; that Thomas Blocksom had any opportunity to influence Philip Goehring in the preparation of the will; or that Thomas Blocksom actually did influence Philip Goehring. Therefore, there is no basis for a claim of undue influence. Mere allegations, no matter how forcefully stated, are not proof.
 {¶ 46} Because there is a specific Ohio Supreme Court case on point determining when a presumption of undue influence arises in a will contest, and because Appellants did not meet their initial burden to prove that there was an attorney-client relationship, or some similar confidential relationship, between Thomas Blocksom and Philip A. Goehring, there was no reason for the trial court to apply a presumption in Appellants' favor. Furthermore, Appellants' entire argument is *Page 14 
based on unsupported allegations and vague inferences of undue influence that cannot, as a matter of law, be sufficient to allow the case to go to full trial. Therefore, Appellants' first assignment of error is overruled.
 {¶ 47} Appellants' second assignment of error deals with Philip's mental capacity to execute the will. The burden of proof in determining testamentary capacity is on the party contesting the will. Kennedy v.Walcutt (1928), 118 Ohio St. 442, 161 N.E. 336, paragraph six of syllabus. As mentioned earlier, R.C. § 2107.74 creates a presumption of the validity of a will, and included in this presumption is that the testator was of sound mind and possessed testamentary capacity to execute the will. Doyle v. Schott (1989), 65 Ohio App.3d 92, 94,582 N.E.2d 1057.
 {¶ 48} "Testamentary capacity exists when the testator has sufficient mind and memory: First, to understand the nature of the business in which he is engaged; Second, to comprehend generally the nature and extent of his property; Third, to hold in his mind the names and identity of those who have natural claims upon his bounty; Fourth, [and] to be able to appreciate his relation to the members of his family."Birman v. Sproat (1988), 47 Ohio App.3d 65, 67-68, 546 N.E.2d 1354, citing Niemes v. Niemes (1917), 97 Ohio St. 145, 119 N.E. 503.
 {¶ 49} In addition to the presumption in favor of Philip Goehring's proper mental capacity, Appellees also relied on an affidavit from Attorney Edward Asper specifically detailing Philip's mental capacity when he signed the will on April 28, 2000. Asper's affidavit states that he was retained by Philip in 1997, and that Philip was competent when he executed wills in August of 1997, January of 1998, and April *Page 15 
of 2000. He specifically averred that Philip understood the nature of his businesses, the nature and extent of his property, knew the names of those who held a natural claim to his bounty, and appreciated his relationships with his various relatives. He stated the Philip was not under duress or undue influence when he executed these wills, whether from Thomas, Carole or some other person.
 {¶ 50} Also relevant are the prior wills that specifically state that the decedent was not close to his relatives and that he purposefully excluded his relatives from inheriting anything from the estate. Both the 1992 and 1994 wills contain such provisions, and no party is arguing that Philip had insufficient mental capacity to execute a will in 1992 or 1994. The failure of a will to provide gifts to relatives could not create a genuine issue of material fact as to the testator's mental capacity when the testator consistently excluded those relatives from receiving any inheritance in a number of prior wills. See, e.g.,Estate of Snell v. Kilburn, 165 Ohio App.3d 352, 2005-Ohio-7076, ¶ 22.
 {¶ 51} Another important item in the record is the judgment entry granting Philip Goehring's request to change his name in 1999. That entry was signed by the same judge who presided over the cases now on appeal. The standard for granting a motion for a change of name is set forth in R.C. § 2717.01 (A): "Upon proof that proper notice was given and that the facts set forth in the application show reasonable andproper cause for changing the name of the applicant, the court may order the change of name." (Emphasis added.) It does not seem possible that the *Page 16 
trial judge would have found it "reasonable and proper" to grant the motion for a change of name if Goehring had not been of sound mind at the time.
 {¶ 52} Appellants have countered this evidence with a copy of Philip Goehring's death certificate, which lists Alzheimer's Dementia as the immediate cause of death. The death certificate lists the interval between the onset of dementia and death as unknown. Appellants believe that an inference can be drawn that Philip's dementia took a long time to develop and probably affected him when he executed the April, 2000, will.
 {¶ 53} The plaintiff in a will contest must present evidence that the testator lacked sufficient mental capacity on the date the will was executed. Estate of Snell, supra, at ¶ 20. A death certificate issued ten months after the will was executed has been held to be irrelevant to the testator's mental capacity at the time the will was executed.Martin v. Dew, 10th Dist. No. 03AP-734, 2004-Ohio-2520, ¶ 19. Philip Goehring died on March 3, 2004, almost four years after the April of 2000 will was executed. Thus, Philip's death certificate issued in 2004 cannot be cited as proof that he lacked sufficient testamentary capacity to execute a will in April, 2000.
 {¶ 54} Furthermore, it is not enough to show that the testator had Alzheimer's disease, even if the Alzheimer's disease existed at the time the will was executed. The plaintiff must also show that Alzheimer's disease actually affected the testator's capacity to execute the will. Id. at ¶ 20. Assuming arguendo that the notations in the death certificate regarding Alzheimer's disease actually referred to events closer in time to the execution of the 2000 will, those references in and of themselves could *Page 17 
not create any genuine issue of material fact. Appellants needed to provide specific evidence that a jury could rely on to overcome the statutory presumption of validity of the will, as well as overcome Appellees' evidence regarding whether Philip understood the nature of his businesses and the extent of his assets, whether he appreciated his relationship to his family, and whether he could keep in mind those who had a natural claim to his bounty. Appellants failed to provide any such evidence.
 {¶ 55} Appellants also rely on a photocopy of an affidavit submitted by Tim Bell to show that Philip lacked sufficient mental capacity to execute a will in April, 2000. Bell alleged that he was a longtime friend of Philip Goehring, always visited him on Christmas Eve, helped Philip feed his cattle, and spent 2-3 hours every day with Philip. Bell asserted that in December of 1996, Philip told him that he was worried that he would be put into some type of home for the elderly if he did not get married. Bell also thought that Philip was "slipping mentally" for some years prior to 1997.
 {¶ 56} The events that Bell discusses occurred prior to Philip's January 30, 1997, psychological evaluation by Dr. Larry K. Truzzie. This psychological report was part of the record in Appellees' motion for summary judgment in the will contest action. Dr. Truzzie determined that Philip Goehring was alert, aware of his surroundings, able to concentrate, did not have amnesia, was able to actively monitor the care of his farm animals and his home, and, "is quite competent to determine the eventual disposition of his estate." *Page 18 
 {¶ 57} Bell's affidavit provides no insight into events occurring after 1997, since he restricted his observations to Christmas of 1996 and to a vague reference to 1997. Once again, a vague assertion that the decedent may have been confused or was "slipping mentally" is not sufficient evidence for a jury to find for the plaintiff in a will contest action, particularly when the observation refers to events that occurred more than three years prior to the execution of the will. Furthermore, Bell's affidavit does not challenge the detailed factual findings in Dr. Truzzie's report, which was created after the time period referred to in Tim Bell's affidavit.
 {¶ 58} Appellants refer to a decision of the probate court dated October 20, 2003, which concluded that Philip Goehring had been an incompetent person for a considerable period of time dating back to at least August 24, 2001. Once again, though, this court decision is too remote in time to be relevant to the date when the will was executed, which was April 28, 2000. "[T]hat [the decedent] was diagnosed with dementia approximately ten months after she executed the will in controversy, * * * is no evidence of the decedent's state of mind at the time of the execution of her will." Wise v. Riddlebaugh (May 29, 1997), 3rd Dist. No. 9-97-6, *4.
 {¶ 59} Finally, Appellants would like to rely on a medical report prepared by Dr. Lyall that is not part of the will contest proceedings. In fact, this report was not even created until after the probate court had ruled on the will contest. The trial court's decision in the will contest matter is dated April 12, 2005 and was filed on April 13, 2005. Dr. Lyall's report is dated April 28, 2005. It is obvious that Dr. Lyall's *Page 19 
report has no bearing on the will contest since it was not, and could not have been, part of those proceedings.
 {¶ 60} Even if we assume Dr. Lyall's report could be used as evidence in the will contest, it would not change the outcome of the case. Dr. Lyall observed that Philip Goehring was in the late-moderate to early severe stages of Alzheimer's disease by April of 2000, would have had poor executive decision-making abilities at that time, and could have been easily influenced by others. The report does not say that Philip was affected in any specific way by Alzheimer's, but rather, that he could have been affected. Appellants, though, were required to show that Philip was actually affected by Alzheimer's disease or some other condition that negated his testamentary capacity, and not merely that he could have been affected by such a condition. This report does not set forth facts that could prove that Philip Goehring did not have the capacity to execute a will in April, 2000. "[E]vidence that [the] decedent suffered from dementia or Alzheimer's disease on [the] day she executed [her] will, `standing alone, is insufficient to raise a fact issue as to a lack of testamentary capacity without some evidence that the disease rendered her incapable of knowing her family or her estate or understanding the effect of her actions'[.]" Martin, supra, 10th Dist. No. 03A-734, 2004-Ohio-2520, ¶ 19, citing In re Estate ofHall (Tex.App. 2001), No. 05-98-01929-CV.
 {¶ 61} As there was no evidence to overcome the presumption of the validity of the will, or to overcome the evidence presented by Appellees to show that the will was properly executed, Appellants' first two assignments of error are overruled. *Page 20 
 TORT CLAIM {¶ 62} Appellants' third assignment of error deals with the tort claim of intentional interference with the expectancy of inheritance:
 {¶ 63} "THE TRIAL COURT ERRED AS A MATTER OF LAW BY SUSTAINING DEFENDANT-APPELLEE'S SUMMARY JUDGMENT MOTION ON THE TORT CASE, AS THERE REMAINED GENUINE ISSUES OF MATERIAL FACT AS TO WHETHER DEFENDANTS CIVILLY CONSPIRED AND TORTIOUSLY INTERFERRED WITH THE INHERITANCE OF PLAINTIFFS."
 {¶ 64} The elements of the tort of intentional interference with the expectancy of inheritance are:
 {¶ 65} "(1) an existence of an expectancy of inheritance in the plaintiff; (2) an intentional interference by a defendant(s) with that expectancy of inheritance; (3) conduct by the defendant involving the interference which is tortious, such as fraud, duress or undue influence, in nature; (4) a reasonable certainty that the expectancy of inheritance would have been realized, but for the interference by the defendant; and (5) damage resulting from the interference."Firestone v. Galbreath (1993), 67 Ohio St.3d 87, 88, 616 N.E.2d 202.
 {¶ 66} This tort is relatively new in Ohio, as it was created in 1993 through the Firestone case. Although there is little Ohio caselaw interpreting this tort, we do recognize that the Fourth District Court of Appeals has held that a claim for intentional interference with the expectancy of inheritance is not ripe for review if adequate relief is available through probate proceedings. Roll v. Edwards, *Page 21 156 Ohio App.3d 227, 2004-Ohio-767, 805 N.E.2d 162, ¶ 28, citing cases from California, Kansas, Colorado, Missouri, Illinois, North Carolina, and Florida. The rationale for this is that the probate proceedings may resolve the damages issue by simply validating the will through which the plaintiff is claiming an expectancy. The court in Roll does not state the obvious further rationale that the probate court has exclusive jurisdiction to take proof of wills, to construe wills, and to direct, control and distribute testamentary estates. R.C. § 2101.24; Estate ofSnell v. Kilburn, 165 Ohio App.3d 352, 2005-Ohio-7076, ¶ 40. The general division of the court of common pleas would normally need to wait for these issues to be resolved before proceeding with a related tort action.
 {¶ 67} The tort of intentional interference with the expectancy of inheritance cannot be used to bypass the probate court or to overturn the probate court's determination of the validity of a will due to the probate court's exclusive jurisdiction in these areas. It would appear that Appellants have attempted to do this very thing by trying to obtain a de facto declaratory judgment in the tort case that the 1994 will is the valid will. This is an improper use of civil proceedings. The correct procedure was followed by the trial judge, who first ruled on the will contest, and then relied on that judgment as res judicata in the tort case. See, e.g., Estate of Snell, supra, ¶ 48.
 {¶ 68} Appellants are correct that a will contest and a tort of intentional interference with the expectancy of inheritance have different elements, at least in the abstract. In this particular case, though, Appellants have only attempted to establish their expectancy by referring to past wills. If they cannot establish this expectancy *Page 22 
through one of these prior wills, then they have failed to prove the first element of their tort claim because they have not alleged or attempted to prove any other basis for their expectancy. Appellees have grasped the essential simplicity of this case, and correctly raise the result in the will contest to resolve the tort claim.
 {¶ 69} Appellees correctly assert that the tort claim may be resolved in terms of Appellants' lack of standing, because they have not established, or even asserted, any interest in Philip's assets that has not already been resolved by the will contest. See, e.g., Hageman v.Cleveland Trust Co. (1976), 45 Ohio St.2d 178, 343 N.E.2d 121. "Standing" means that the plaintiff has some personal stake in the outcome of the controversy, some concrete injury that will be resolved by the court, rather than a hypothetical or conjectural matter.Bourke v. Carnahan, 163 Ohio App.3d 818, 2005-Ohio-5422,840 N.E.2d 1101, ¶ 10.
 {¶ 70} This case may also be resolved in terms of res judicata, at least with respect to those plaintiffs who were parties to the will contest, because it is axiomatic that the issue of which will is valid has been resolved for those parties by the probate proceedings. The doctrine of res judicata prevents the litigation of matters already decided by a court. Holzemer v. Urbanski (1999), 86 Ohio St.3d 129, 133,712 N.E.2d 713. Thus, "[a] final judgment or decree rendered upon the merits, without fraud or collusion, by a court of competent jurisdiction * * * is a complete bar to any subsequent action on the same claim or cause of action between the parties or those in privity with them."Norwood v. McDonald (1943), 142 Ohio St. 299, 27 O.O. 240, 52 N.E.2d 67, paragraph one of the syllabus. *Page 23 
 {¶ 71} The plaintiffs in this case were either part of the will contest (and are barred by res judicata), or were not part of the will contest (and are barred through lack of standing, or by failure to assert or establish that they have any expectancy apart from the resolution of the will contest). In either situation, the validation of the April, 2000, will has terminated their tort claim.
 {¶ 72} Appellees also correctly argue that an essential element of the tort of intentional interference with the expectancy of inheritance is proof of the mental state of "intent to harm." Phillips v. Rayburn
(1996), 113 Ohio App.3d 374, 379, 680 N.E.2d 1279. Appellants have failed to provide any evidence that Thomas Blocksom had the requisite intent to interfere with any alleged expectancy, and without such proof they cannot establish the second element of the tort claim. Appellants have not pointed to any evidence in the record (other than a vague reference to "circumstantial evidence") to prove that Thomas Blocksom even knew of the provisions in any of Philip Goehring's wills prior to the death of Carole Blocksom, much less that he wished to interfere with them.
 {¶ 73} Appellants claim that they should not have to prove that Thomas Blocksom intended to specifically injure each individual plaintiff in this case, but Appellees never made such an argument. Appellees simply established that Thomas Blocksom had no involvement in, or knowledge of, the terms of any of the wills, which forced Appellants to establish some type of proof of Thomas Blocksom's intent to interfere with the supposed expectancies. Appellants provided no evidence. Thus, no jury could rule in their favor on the second element of their tort claim. *Page 24 
 {¶ 74} Appellants repeatedly refer to the many alleged misdeeds of Thomas Blocksom after the execution of the April of 2000 will as proof of genuine issues of material fact in this case, but these allegedly improper actions done by Thomas Blocksom would only be relevant if: (1) Appellants had a valid expectation of inheriting something; (2) if Thomas Blocksom had the requisite intent to interfere with the expectation; and (3) if Thomas Blocksom committed tortious acts that actually interfered with that expectation. Simple allegations with no evidence that Thomas Blocksom committed tortuous acts is not enough to overcome summary judgment.
 {¶ 75} Appellees also argue that summary judgment was correctly granted to the Estate of Carole Goehring, one of the defendants in the tort case, due to the expiration of the statute of limitations. Appellants brought their claims against the Estate of Carole Goehring on April 7, 2003. Carole died in August of 2001. The version of R.C. §2117.06 that was in effect at the time of Carole Goehring's death required tort claims to be brought within one year:
 {¶ 76} "(A) All creditors having claims against an estate, including claims arising out of contract, out of tort, on cognovit notes, or on judgments, whether due or not due, secured or unsecured, liquidated or unliquidated, shall present their claims in one of the following manners: * * *
 {¶ 77} "(B) All claims shall be presented within one year after the death of the decedent, whether or not the estate is released from administration or an executor or administrator is appointed during that one-year period. Every claim presented shall set forth the claimant's address. *Page 25 
 {¶ 78} "(C) A claim that is not presented within one year after the death of the decedent shall be forever barred as to all parties, including, but not limited to, devisees, legatees, and distributees. No payment shall be made on the claim and no action shall be maintained on the claim, except as otherwise provided in sections 2117.37 to 2117.42
of the Revised Code, with reference to contingent claims."
 {¶ 79} Appellants respond to this argument by attempting to apply the discovery rule to prevent the application of the statute of limitations. Generally, a cause of action accrues and the statute of limitations begins to run at the time the wrongful act was committed. Collins v.Sotka (1998), 81 Ohio St.3d 506, 507, 692 N.E.2d 581. However, the discovery rule is an exception to this general rule and provides that a cause of action does not arise until the plaintiff discovers, or by the exercise of reasonable diligence should have discovered, that he or she was injured by the wrongful conduct of the defendant. Id. Appellants provide no cases where a court has applied the discovery rule to the tort of intentional interference with the expectancy of inheritance, and there does not appear to be any such caselaw. In fact, in order to use the discovery rule, Appellants are forced to argue that they did not know that they had an expectancy prior to 2003, even though this expectancy supposedly arose long before the execution of the April 2000 will. There is no logical way for Appellants to argue they had an expectancy of inheritance if they did not know about it. It appears that the expiration of the statute of limitations also supports the trial court's judgment with respect to the Estate of Carole Goehring as a defendant. *Page 26 
 {¶ 80} Based on all the aforementioned arguments, including Appellants' complete lack of evidence as to the first, second and third elements of their tort claim, Appellants' third assignment of error is overruled.
 {¶ 81} Appellants also presented a claim for civil conspiracy, but Appellees correctly point out that a claim for a civil conspiracy cannot stand on its own. It is dependant on proof of another unlawful act having been committed:
 {¶ 82} "The tort of civil conspiracy has been defined as `a malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages.' LeFort v. Century 21-Maitland Realty Co. (1987),32 Ohio St.3d 121, 126, 512 N.E.2d 640, 645. The malice involved in the tort is "that state of mind under which a person does a wrongful act purposely, without a reasonable or lawful excuse, to the injury of another." `Williams v. Aetna Fin. Co. (1998), 83 Ohio St.3d 464, 475,700 N.E.2d 859, 868, quoting Pickle v. Swinehart (1960), 170 Ohio St. 441, 443, 11 O.O.2d 199, 200, 166 N.E.2d 227, 229. An underlying unlawful act or tort is required before a party can prevail on a civil conspiracy claim. SeeGosden v. Louis (1996), 116 Ohio App.3d 195, 219-220, 687 N.E.2d 481, 496-497." Dickerson Internationale, Inc. v. Klockner (2000),139 Ohio App.3d 371, 380, 743 N.E.2d 984.
 {¶ 83} Since there is no other viable claim in Appellants' complaint, the civil conspiracy count was also properly dismissed.
 ERROR COMMON TO BOTH CASES {¶ 84} Assignment of Error No. 4 relates to both of the underlying cases: *Page 27 
 {¶ 85} "THE TRIAL COURT ERRED, AS A MATTER OF LAW, IN BOTH CASES BY FAILING TO GRANT APPELLANTS' PARTIAL SUMMARY JUDGMENT MOTION, AS NO GENUINE ISSUES OF MATERIAL FACT EXIST AS TO THE INVALIDITY OF THE CP TRUST, THE SUBJECT REAL ESTATE TRANSFERS TO THOMAS BLOCKSOM, THE POWER OF ATTORNEY TO THOMAS BLOCKSOM, AND THE DISCLAIMER OF TRUST FUNDS."
 {¶ 86} There appears to be considerable conflicting evidence concerning a number of transfers of personal and real property while Thomas Blocksom was acting as a fiduciary to Philip Goehring after the execution of the April, 2000, will. As discussed earlier, though, these transfers are irrelevant to Appellants because they have no right to inherit under the will. It would have been a useless act for the trial court to rule on the validity of the aforementioned transactions because the court's ruling would have no effect on the ultimate outcome of either case. Since Thomas Blocksom is the primary beneficiary of the estate, Appellants are, in essence, asking this Court to invalidate a number of transactions performed by Thomas Blocksom so that the property could then be turned over to Philip Goehring's estate, which would in turn be awarded back to Mr. Blocksom as the primary beneficiary of the estate. Once again, Appellants have failed to establish how they have any standing to request such relief.
 {¶ 87} Although there is a considerable amount of evidence in this case, most of that evidence is irrelevant to resolve the issues on appeal. In the will contest action, Appellants failed to provide the necessary material evidence showing that *Page 28 
Philip Goehring lacked the testamentary mental capacity to execute the April, 2000, will, and failed to provide any material evidence whatsoever of undue influence. Appellants' first two assignments of error dealing with the will contest are hereby overruled, and we affirm in full the court's judgment in the will contest. Once we have affirmed the will contest (and by necessity it needed to be adjudicated first), it becomes a crucial factor in the tort case, and becomes res judicata for the issue of which will is valid. Appellants have not established any evidence of an expectation of an inheritance either through the April of 2000 will or in any fashion apart from that will. Appellants also failed to show that Appellees had any intent to interfere with an inheritance, or that they actually committed a tortious act regarding an inheritance. For these reasons, Appellants' third assignment of error is overruled. The fourth assignment of error is overruled due to Appellants' lack of standing to challenge Thomas Blocksom's allegedly improper transactions.
 {¶ 88} Because we have overruled all of Appellants' assignments of error, the judgments of the trial court are hereby affirmed.
 Vukovich, J., and DeGenaro, P.J., concurs. *Page 1